KENNETH S. GARDEN, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 4000

December 3, 1957 318 P.2d 652

(Petition for rehearing denied December 19, 1957.)

*Harry E. Claiborne*, of Las Vegas, for Appellant.

*Harvey Dickerson*, Attorney General; *George M. Dickerson*, District Attorney, Clark County; *VeNoy Christofferson*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MERRILL, J.:

This is an appeal from judgment of conviction of the crime of statutory rape.

The first assignment of error is that the jury verdict of guilty is unsupported by any substantial evidence; that the trial court, under the evidence, should have advised a verdict of not guilty. Appellant has cited authority upon the proposition that a scintilla of evidence is not enough; that there must be substantial evidence to provide support for the verdict. This proposition does not meet the problem presented by this case, however. There can be no doubt of the substance of the proof if that proof be regarded as credible. The problem is exclusively one of credibility.

The prosecutrix was appellant's stepdaughter, age 12 years. She testified that the offense took place on Monday, May 21, 1956 in the family home in Las Vegas at about 5:30 o'clock p.m. Corroborating her testimony was that of her sister, age 10 years, who testified to having witnessed acts of intercourse between her sister and her stepfather on several occasions. The prosecutrix testified in some detail to the nature of the acts constituting the offense. These acts, if committed, unquestionably constituted the crime of statutory rape. This testimony, if believed, unquestionably provided substantial proof of guilt.

In four respects doubt is cast upon the truth of this testimony. (1) The prosecutrix had testified under oath at a juvenile court hearing that the offense had been committed Sunday, May 20. At the time of trial she was unable to explain this discrepancy but insisted that Monday, the 21st, was the true date. (2) Testimony of several witnesses called by the appellant accounted for his presence elsewhere during the late afternoon of Monday, the 21st. (3) The prosecutrix testified that she had engaged in acts of intercourse with appellant over a substantial period of time, commencing when the family resided in Oregon, continuing as the family moved to California, to Nebraska, to Reno, Nevada, and, finally,

to Las Vegas. A Nebraska physician called as witness by the appellant, testified that he had examined the prosecutrix in March 1955 and that at that time she showed no indication of having engaged in intercourse.

These issues and inconsistencies constitute no basis for reversal. It was the jury function to resolve these matters and the manner in which it did so and the weight it gave to the evidence will not be questioned upon appeal. "Contradictions and inconsistencies in the testimony of a witness alone will not constitute inherent improbability." People v. Amadio, 25 Cal.App. 729, 731, 145 P. 151, 152, as quoted in People v. Holman, 72 Cal. App.2d 75, 89, 164 P.2d 297, 305.

The fourth and most serious respect in which the testimony of both girls is impeached is found in the fact that both had, prior to trial, wholly repudiated their original statements as to the guilt of their stepfather and had insisted upon his innocence. Upon cross examination the prosecutrix admitted that four days after the juvenile court hearing she had told her mother that she had made up the story of her stepfather's misconduct because she was angry with him for punishing her; that during the following few days she had made the same statement of repudiation to appellant's attorney and to four other persons and had signed a statement to that effect at the office of appellant's attorney. Her sister had likewise made a statement to appellant's attorney repudiating her earlier statement to the police that she had witnessed the commission of acts of intercourse.

Notwithstanding their admissions of earlier inconsistent statements, both girls at the time of trial insisted upon the truth of their testimony then given and upon the fact of their stepfather's guilt. Their earlier inconsistencies they explained as due to their desire to prevent their stepfather from having to go to prison.

These earlier repudiations cannot be said to have destroyed the probative value of testimony to the contrary given at the time of trial or to have rendered that

testimony incredible as a matter of law. The explanation given by the girls for their inconsistent statements was not inherently improbable. The inconsistencies, then, posed a question of credibility which it was the jury's function to resolve. The jury obviously chose to disbelieve that the detailed description of the manner in which the offense had been committed was a creature of imagination which had been related in juvenile court and on trial below out of longlasting anger. It obviously chose to believe that, while anger may originally have caused the complaint to have been made, still the circumstances of the offense were truly related; that it was the repudiation of the complaint which was false, but that a false repudiation was understandable in the light of the children's affection for or loyalty to their stepfather.

In two California cases the identical problem was faced by the court. Both cases involved statutory rape committed by the defendant upon his own child. In People v. Crawford, 24 Cal.App. 396, 141 P. 824, 827, the court stated, "It can be readily understood how the jury must have viewed the situation and made allowance for the natural desire of the child to protect her father. No doubt the jurors believed that, while it was not strange nor incredible that the prosecutrix would falsely avow her father's innocence, it was almost unthinkable that she would falsely charge him with the crime." In People v. Avena, 34 Cal.App. 500, 168 P. 148, the prosecutrix and her sister both admitted that their testimony at the trial was directly contrary to that given by them at the preliminary examination. Their explanation of the testimony given at the preliminary examination was that they had been told that if their father was convicted he would be sent to the penitentiary and they to the reform school. The court stated, "It was for the jury to decide whether these contradictory statements under all the circumstances and facts placed before the jury so far impeached these witnesses as to render their testimony at the trial improbable or unbelievable."

We conclude that it was not error for the trial court to leave the verdict to the jury; that the jury's determination of credibility may not be disturbed on this appeal.

Appellant next asserts as error the rejection by the trial court of certain testimony offered for purposes of impeachment. The testimony was to the effect that the prosecutrix had stated to the witness that her stepfather was innocent and that she had made up the story upon which her complaint had been based. The court rejected the testimony upon the ground that the prosecutrix had already admitted the fact. The record demonstrates that she had not admitted the conversation in question. As to this witness she first denied the conversation and then, upon being pressed, modified her testimony to state that she did not remember having it.

The court's recollection of the precise state of the record was faulty. However, even should this constitute its ruling erroneous as a matter of law, no prejudice can be found. The rejected testimony would not have established the falsity of any testimony given at the time of trial but would simply have supplied facts which the prosecutrix had stated she did not remember. She had already readily admitted the fact of her repudiation of the complaint and that she had voiced her repudiation to six different persons. We fail to see how proof that she had voiced it to a seventh could alter the situation in the slightest degree. The essential question was not whether the statement had been made, or to whom, or how often it had been made. The question was whether the explanation for making it was reasonable and believable. There is no merit in this assignment of error.

Appellant assigns as misconduct of the state's attorney a remark made during argument to the jury upon the point of credibility. Counsel stated "That only leaves the defendant who has admitted a burglary and a theft." The remark referred to testimony of the defendant who, upon being asked whether he had ever been convicted

of felony, had answered in the affirmative and upon questioning by his own attorney had supplied the information as to the crimes involved. Objection was made to counsel's remark and the jury was admonished to disregard it. Any harm which may have resulted from the remark (independent of that resulting from the testimony to which it referred) was, we feel, eliminated by the admonition.

Appellant assigns as misconduct failure of the trial judge to comply with a jury request, made during the course of its deliberation, that certain testimony be read back to it. The record shows that the request was made at six o'clock p.m., after the jury had been in deliberation for about six hours. At that time the judge advised that the testimony would be read back to the jury at 10 o'clock the following morning. At a little after 11 o'clock that same night, without awaiting the reading back of testimony, the jury announced that it had reached its verdict.

The manner in which such a jury request is to be handled lies largely within the discretion of the trial judge. State v. Jennings, 131 Ore. 455, 282 P. 560. In the case at bar the request was not denied. The jury was expressly advised that it would be granted the following morning. Obviously the need for a reading back of the testimony disappeared as the jury's deliberations continued and it was able to reach its verdict without such assistance. A jury's need for such assistance is, of course, a question which the jury alone is able to decide. We find no misconduct here.

Appellant assigns as error failure of the trial court to grant new trial upon the ground that the evidence fixed the date of the crime as May 21, 1956 rather than May 20, 1956 as charged in the information. This was not a material variance. Ex Parte Stricker, 71 Nev. 193, 284 P.2d 383. Appellant claims that prejudicial surprise

resulted from the variance which affected his ability to prepare a case in defense. If such were the case his proper course was to ask a continuance. This was not done. In denying motion for new trial upon this ground the trial judge noted that no attempt had been made to show newly discovered evidence. We may therefore assume that despite his surprise appellant was still able to summon all available evidence as to his whereabouts on the afternoon of May 21.

Other error is assigned which we do not find it necessary to consider since it was not the subject of objection made during the course of trial.

Affirmed.

BADT, C. J., and EATHER, J., concur.