W. G. NUELSEN and Harriet M. Nuelsen, Appellants,

v.

L. C. SORENSEN et al., Appellees.

No. 16789.

United States Court of Appeals
Ninth Circuit.

May 31, 1961.

As Amended Aug. 28, 1961.

Lyndol L. Young, Francis J. McEntee, Los Angeles, Cal., for appellants.

Musick, Peeler & Garrett and Harold F. Collins, Jesse R. O'Malley and Frederick B. Warder, Jr., Los Angeles, Cal., for appellees.

Before BARNES, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

This action for damages and other relief is an outgrowth of the merger of Kelite Products, Inc. an Illinois corporation, and Kelite Products, Inc., a California corporation. Both were manufacturers and distributors of chemical cleaning compounds, the Illinois corporation under license from the California corporation. The merger was effectuated on April 1, 1955, at which time the Illinois corporation passed out of existence, its assets and liabilities taken over by the California corporation.

The suit, based on allegations of fraud and conspiracy, was brought by W. G. Nuelsen who had been the principal stockholder and president of the Illinois corporation.[1] He had no complaint concerning the terms of the merger agreement, but rather with the way in which that agreement and certain related agreements were carried out. Named as defendants in addition to the California corporation were L. C. Sorensen, its principal stockholder and president, and the other parties listed in the margin.[2] Ju-

---

1. Nuelsen's wife, Harriet M. Nuelsen, was also named a party plaintiff.

2. W. E. Zander, Harvey Wakefield, Louis McDonald and R. E. Caughly, who along

**456**

risdiction in the district court rested on diversity of citizenship.

Issue was joined on the allegations of fraud and conspiracy, and the cause was tried to the court without a jury. Near the end of the trial plaintiffs amended their complaint to allege breach of contract with respect to a certain employment contract to be discussed below. These allegations were denied.

Judgment was entered for defendants and plaintiffs appeal. Specified as error are the alleged failure of the trial court to make findings on certain issues of fact, the entry of findings of fact and conclusions of law favorable to appellees, and the admission or exclusion, over objection, of certain items of evidence.

The merger agreement was entered into on February 9, 1955, but did not become effective until April 1, of that year. In the interim, on March 15, 1955, Nuelsen and the California corporation entered into an employment agreement. Under the terms of this agreement Nuelsen was to be elected senior vice president of the California corporation, with over-all supervision of finance, insurance and accounting practices, market analysis, and other administrative functions to be assigned by the board of directors.

Nuelsen's employment was to commence when the merger became effective and to continue for a period of seven years. During the first three years Nuelsen was to receive a salary of $40,000 per annum for which he would devote full time to this employment. During the remaining four years he was to receive an annual salary of $20,000 for which he would devote one half of his time to the company. When the merger

with Sorensen were directors of the California corporation; Ed Schinke, who along with Sorensen, McDonald and Daniel was an officer of that corporation; Elvon Musick, attorney for the California corporation; the Kelite Employees' Profit Sharing Retiring Plan, a trust; and Alfred L. Rees, Daniel, McDonald, Wakefield and Schinke, as trustees of that trust. It was later stipulated that the Cali-

became effective Nuelsen was duly elected executive vice president of the California corporation, moved from Illinois to California, and began the performance of his employment duties.

As a result of the merger, Nuelsen, his wife and her daughter, Carol N. Kelly, became the owners of 86,620 shares of the common stock of the California corporation. On July 11, 1955, they entered into an agreement with the California corporation whereby the latter agreed to buy 10,000 of these shares each year for a period of eight years beginning in 1956 and continuing until 1963.[3]

On September 28, 1955, Nuelsen and the California corporation entered into an agreement amending the employment contract. It was therein provided that beginning October 1, 1955, Nuelsen would be relieved of his responsibilities under the former agreement, and his services to the company thereafter would be of an advisory and consultative nature. His compensation was to be reduced to a $20,000 annual figure beginning on that date, but was to continue for nine years from March 15, 1955.

It was further provided in this amendatory agreement that in consideration of Nuelsen's agreement to accept a reduction in his compensation, the corporation would assign to him at cost an option it had acquired to purchase all the stock of C. U. McClellan Laboratories, Inc., a California corporation. This option called for an exchange of 10,000 shares of the common stock of the California Kelite corporation for all of the outstanding stock of McClellan Laboratories. In order that Nuelsen might exercise this option it was further provided in the amendatory agreement that the

fornia corporation would be substituted in the place of Daniel, McDonald, Rees, Wakefield and Schinke as trustee of the trust.

3. Before this action was commenced Harriet M. Nuelsen purchased all of Carol N. Kelly's stock in the defendant corporation, so Mr. and Mrs. Nuelsen became the owners of all the stock described in the stock purchase agreement.

stock sales agreement would be deemed amended to release 10,000 shares therefrom.

Pursuant to this agreement Nuelsen resigned as senior vice president in September 1955, and on October 12, 1955, exercised his newly-acquired option to purchase the outstanding stock of McClellan Laboratories. Nuelsen then moved his office from the California Kelite corporation to the McClellan plant. He was not thereafter requested to render any substantial service for the Kelite corporation except in connection with one matter involving company morale.

On February 23, 1956, a supplemental stock purchase agreement was entered into under which the Kelite corporation assigned to the Kelite Employees' Retirement Plan, a trust, its interest in the stock purchase agreement of July 11, 1955. This assignment was later vacated and any issue concerning that assignment is now moot.

On April 22, 1957, Sorensen, president of the Kelite corporation, wrote to Nuelsen advising that the company's internal control department had theretofore failed to reflect Nuelsen's changed status accomplished by the September 28, 1955, amendment of the employment contract, from that of employee to one retained in an "advisory and consulting" capacity. Nuelsen was further advised that this change would be made effective May 1, 1957, after which date deduction for federal income tax withholding, federal insurance and other employee deductions would not be made.

Nuelsen's May 15, 1957, salary check was computed on the new basis, with only $16.96 deducted, this representing Nuelsen's continued coverage under a group insurance policy. In an accompanying letter the secretary-treasurer advised Nuelsen that this deduction was being made at Nuelsen's express request. Nuelsen promptly returned the May 15 check to the corporation, stating that he had no desire to change any of his employment arrangements with the company. Thereafter, as each bi-monthly pay date arrived, the company sent Nuelsen a current check computed without deductions except for the group insurance, and each time returned all the previous checks Nuelsen had sent back. In each instance Nuelsen promptly returned the checks. In accompanying letters both the corporation and Nuelsen (personally and later through his attorney) maintained their respective positions concerning the contractual arrangement between them.

On July 12, 1957, a trustee of Kelite Employees' Retirement Plan advised Nuelsen that since a participant in the plan must be a full-time employee Nuelsen was not entitled to benefit therefrom. He was told that he had a current balance in the fund in the sum of $1,030.93, which could be left to accrue earnings or could be distributed at once in accordance with the established formula. On August 20, 1957, Nuelsen advised the trustee that he desired no change in his status as a beneficiary under the pension plan. The trustee again advised Nuelsen on August 27, 1957, however, that he was ineligible under the plan, and that Nuelsen's balance therein would be paid out according to the formula.

In September 1957, the management of the Kelite corporation informed the company's attorney that Nuelsen was secretly soliciting proxies for the purpose of gaining control of the company and removing Sorensen as president. The management also informed counsel that in connection with this solicitation, Nuelsen had made false accusations to one or more shareholders concerning Sorensen's honesty and executive activities. The corporation's attorney, appellee Musick, by letter dated September 26, 1957, advised the board of directors that these circumstances constituted a breach of the employment contract as amended, and that the corporation could terminate the agreement and be absolved from liability for any more payments to Nuelsen.

Pursuant to this advice, the board of directors of the Kelite corporation on September 28, 1957, adopted a resolution determining that Nuelsen had breached the employment agreement as amended,

terminating that contract, and announcing that no further payments would be made to Nuelsen thereunder. Nuelsen was promptly notified of the board's action. No compensation under the amended employment agreement was tendered after August 31, 1957.

This suit was commenced shortly thereafter. In the first of three causes of action it was alleged that in connection with the above-described transactions and by means of fraudulent and conspiratorial conduct, defendants had wrongfully (1) ordered Nuelsen to move his office from Chicago to Los Angeles when the merger was effectuated, (2) relegated him to a desk and chair in a small office where he was completely ignored and not permitted to perform the duties and exercise the powers of executive vice president, (3) required him to purchase the corporation's option to buy McClellan Laboratories, (4) forced him to agree to an amendment of the employment contract and in connection therewith to resign as executive vice president, (5) obtained Nuelsen's consent to the assignment of the stock purchase agreement by the California corporation to Kelite Employees' Retirement Plan, (6) deprived him beginning in May 1957 of his rights as an employee to participate in the company retirement plan and receive other fringe benefits, and (7) terminated the employment contract as amended, as of October 1, 1957, retroactive to September 1, 1957.

Actual damages in the sum of $750,000 and punitive damages in the sum of $250,000 were sought in the first cause of action. As previously stated, the complaint was later amended to allege breach of contract with regard to the termination of the amended employment contract.

In the second cause of action appellants sought annulment of the assignment of the stock purchase agreement and enforcement of that agreement to require the corporation to pay Nuelsen $250,000 for his remaining 50,000 shares of Kelite corporation. In the third cause of action appellants sought a judicial declaration that the various agreements described above and Nuelsen's rights thereunder, as alleged in the complaint, were in full force and effect, such relief to be alternative to that sought in the first and second causes of action. As noted above, appellants were denied any relief; judgment was entered for appellees.

We must first deal with appellees' motion to dismiss the appeal as to all appellees and with appellee Elvon Musick's motion to dismiss the appeal as to him.

The motion to dismiss the appeal *in toto* is made on the ground that appellants have not presented their case here on the same theory as that which they advanced in the trial court. It is argued that when appellants amended their complaint to allege breach of contract they abandoned the fraud and conspiracy theory which had been originally advanced. Hence, appellees contend, appellants are now limited to their breach of contract position, but in their briefs in this court they have reverted to the fraud and conspiracy theory.

Were we to hold that appellants abandoned their fraud and conspiracy theory in the trial court, this would not call for dismissal of the appeal, but only for disregard of arguments advanced on that theory. Appellants' contentions in this court are not limited to the issues of fraud and conspiracy, but also encompass breach of contract.

Certain colloquy between court and counsel, the form of closing arguments, and some expressions in the trial court's opinion tend to support appellees' view that appellants abandoned the fraud and conspiracy theory. The pleading amendment, however, purports to be rather a supplementation of the original allegations with regard to the termination of Nuelsen's employment under the amended contract. Moreover, the trial court dealt with the issues of fraud and conspiracy in its findings of fact. We therefore conclude that appellants did not abandon their fraud and conspiracy allegations and may rely upon them as well as on the breach of contract theory

in this court. The motion to dismiss the entire appeal is denied.

The motion to dismiss the appeal as to appellee Musick is grounded on the contention that in the trial court counsel for appellants had agreed to dismissal of the action as to Musick. When at the close of appellants' evidence a motion was made to dismiss the action as to Musick, counsel for appellants said: "I won't resist it, Your Honor."

■ Under some circumstances this remark might be regarded as indicating acquiescence in the dismissal, in which event no appeal would lie. Considering the record as a whole, however, we do not believe that acquiescence was intended, but that counsel meant only that appellants would forego argument on the motion. No order of dismissal as to Musick was entered under rule 41(b), Federal Rules of Civil Procedure, 28 U.S.C.A. The dismissal as to him was evidenced only by the judgment from which this appeal is taken. The motion to dismiss the appeal as to Musick is denied.

Coming to the merits, appellants first contend that the trial court erred in failing to make findings of fact on the issues raised in paragraphs II to IX of the first cause of action stated in the complaint.

■ Most of the allegations contained in paragraphs II to IX of the complaint were evidentiary in character and should not have been pleaded at all. Many of them were redundant and immaterial to any issue in the case. The essential allegations that certain agreements were entered into in connection with the merger were undisputed. Hence as to them findings were not required. Yanish v. Barber, 9 Cir., 232 F.2d 939, 947. Allegations pertaining to Nuelsen's health, life expectancy and prospective earnings had there been no merger were relevant only to damages. No findings thereon were necessary since judgment was entered for defendants.

We conclude that the trial court did not err in failing to make findings of fact with reference to the allegations contained in the indicated paragraphs of the complaint.

Appellants next argue that the trial court's findings of fact III to XVIII are clearly erroneous and insufficient.

The contention as to insufficiency is directed against findings of fact III–IV, VI–VII and IX–X. These paragraphs contain little in the way of affirmative statements concerning the transactions between the parties. For the most part they consist of recitals to the effect that all or some of the allegations set out in specified paragraphs of the complaint are "not true" or "untrue." Finding of fact III is more all-inclusive, reciting that "It is not true that any acts of fraud or any acts of conspiracy which are charged in the complaint were committed by the defendants, or any of them."

Appellants argue that findings of fact which take this form are not sufficiently explicit to meet the requirements of rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Appellees make no response to this argument.

This "shorthand" form of finding, whereby the allegations of particular paragraphs of a pleading are referred to by paragraph number or by repetition of the allegation and are found to be "true" or "untrue," is not in compliance with the local rules of the United States District Court for the Southern District of California. West's Ann.Cal.Code. It is provided in rule 7(a) of those rules that findings of fact "shall be set out in concise narrative form in separately numbered paragraphs and in chronological order wherever practicable, and not by mere reference to allegations contained in pleadings."

Aside from this patent noncompliance with local court rules, it must be apparent that findings in this form increase the task of appellate review. Instead of being able to determine what facts were found by reading findings of fact prepared in narrative form, it is necessary to engage in a comparative analysis of the pleadings and findings together. This court disapproves of findings in this

form except in circumstances which render direct and affirmative findings impracticable.

■ In this case, however, we do not believe that appellants have been prejudiced by the form of the findings set out in paragraphs III–IV, VI–VII and IX–X. We have made the necessary comparison between the complaint and these findings and are therefore fully advised as to the intendment of those findings. Appellants' brief indicates that their counsel must have gone through the same process. There is no indication of confusion or disagreement as to what the court actually found. We therefore hold that while the form of the questioned findings is improper, the entry thereof under the circumstances of this case was not reversible error.

This brings us to the contention that findings of fact III to XVIII are clearly erroneous. These findings deal with every phase of the merger transaction from the time the merger agreement was entered into on February 9, 1955, until October 1, 1957, when the Kelite corporation unilaterally terminated the employment agreement as amended. All the grievances listed in the complaint and amendment thereto are dealt with and as to each it was found that there had been no fraud, conspiracy, or breach of contract, and appellants had suffered no legal wrong.

To a substantial extent appellants' attack upon the sufficiency of the evidence to support these findings draws into question the credibility of the witnesses. Time after time in appellants' briefs it is asserted that the findings are not supported by "credible and substantial" evidence. Appellants advance an additional contention which, although not framed as an attack upon credibility, actually constitutes such an attack. This is the argument that since witness Jones testified on the basis of written office records which he had maintained, testimony in conflict therewith is "without evidentiary value."

■■ A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. In so evaluating the evidence the trial court's appraisal of the credibility of the witnesses is to be accepted, no challenge to such appraisal being permissible in the appellate court. Appellants' attack upon the credibility of witnesses whose testimony was apparently accepted by the court will therefore be disregarded.

Appellants argue that they are not "bound" by the testimony given by appellees Sorensen and Daniel, as they were called as adverse witnesses under rule 43(b), Federal Rules of Civil Procedure.[4] Presumably this would also apply to appellee Musick, whose deposition was read into evidence by appellants because he was unable to appear at the trial.

■ It is true that appellants are not bound by the testimony of adverse witnesses called under rule 43(b). But this means only that they were free to cross examine, contradict and impeach these witnesses, and that even if the testimony was not contradicted, the court was not required to accept it as true. Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467, 471. The testimony of an adverse witness is nonetheless evidence in the case, to be weighed with all other evidence and given such probative value as the fact-finder deems appropriate.

With regard to the transaction whereby Nuelsen purchased the Kelite corporation's option to acquire the stock of McClellan Laboratories, appellants argue that the trial court "conceded" that Nuelsen was overreached by appellee Daniel. Appellants rely upon an observation, quoted in the margin, made by the

4. Sorensen also testified at length on appellees' case in chief and as to that testimony was not a witness under rule 43(b).

trial court at the close of all the evidence.[5] From our reading of the court's remarks we do not infer that the court intended a finding that there had been an overreaching. At most the court indicated doubt on that factual question and therefore noted an alternative reason why Nuelsen was not aggrieved by the transaction. Any uncertainty the court had as to this factual point was apparently cleared up in the court's mind by the time the formal findings of fact were entered. It was there expressly found that there had been no fraud in connection with the McClellan transaction.

No useful purpose will be served by summarizing in this opinion the evidence relevant to the findings of fact now under discussion. It is in conflict on almost every point. That which supports appellants' view is not so overwhelming as to leave us with the definite and firm conviction that a mistake has been committed. We therefore hold that none of the challenged findings of fact are clearly erroneous.

The facts thus established render immaterial most of the legal questions raised by appellants in their attack upon the conclusions of law. Regarding two of the conclusions, however, appellants raise legal questions which must be explored. We refer to the fifth and sixth conclusions of law in which the court held that "prior to September 1, 1957," Nuelsen, "by his acts and conduct," totally breached the amended employment agreement, and that the Kelite corporation was thereby justified in terminating that agreement.

Challenging these conclusions of law, appellants assert that the employment agreement as amended was part of the consideration Nuelsen received for entering into the merger agreement under which he gave up his $40,000 annual salary as president of the Illinois corporation. Because of this, appellants argue, the amended employment agreement could be terminated only upon the payment to Nuelsen of the full amount due him thereunder.

An employment contract for a specified term, made in California, may be terminated only for a reason specified in section 2924 of the California Labor Code.[6] If so terminated for cause, compensation solely for employee services might be cut off notwithstanding the fact that the contract was supported by independent consideration such as that here asserted by appellants.

This brings us to the question of whether the board of directors had the right to terminate this contract for cause under section 2924. If the amended contract was in fact an employment contract, and if it was in full force and effect in the summer of 1957, and if the corporation did nothing to estop it from relying upon the instrument as a contract of employment, the acts of Nuelsen in seeking to gain control of the corporation and in vilifying Sorensen constituted a material breach of the contract releasing the corporation from further performance under it.

There is much in the record, however, to indicate that the contract as amended may not have been an employment contract to any substantial extent, or that if it was such a contract that it may have been materially breached by the corporation on April 22, 1957, in such manner as to relieve Nuelsen of his full obligations as an employee, or that if the

5. "I do not attach, or to put it another way: I do not understand too well what motivated Mr. Daniel or anyone else in the McClellan transaction. However that may be, assuming that there was an overreaching and misrepresentation by Mr. Daniel, as far as the McClellan purchase is concerned, I feel that Mr. Nuelsen was an experienced enough business man to have analyzed that situation for himself, and my feeling would be that he was not misled and could not have been misled by any misrepresentation."

6. "§ 2924. An employment for a specified term may be terminated at any time by the employer in case of any wilful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it."

contract were not breached the corporation's course of conduct in relation to it may have estopped the corporation from holding Nuelsen to his full obligations under the contract.

Yet none of these theories were advanced in appellant's pleadings, stated as issues in the pretrial order, presented in the trial court, or dealt with in the briefs on appeal. This court has refused to reverse on a ground not argued in the trial court. United States v. Waechter, 9 Cir., 195 F.2d 963.

This accords with the general rule that an appellate court will not consider sua sponte arguments not presented or urged by the litigants. This restraint is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial forum is to decide and in order that the litigants not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037.

There is, however, no rigid and undeviating judicially declared practice under which courts of review invariably and under all circumstances decline to consider all questions which have not previously been specifically urged. Indeed there could not be without doing violence to the statutes which give federal appellate courts the power to modify, reverse or remand decisions "as may be just under the circumstances." 28 U.S.C.A. § 2106. Exceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below. The power to raise and decide questions sua sponte is, however, to be exercised sparingly and with full realization of the restrictions and limitations inherent in its employment.[7]

Rather than consider the matter sua sponte, of course, the appellate court may note the existence of the unargued, undecided question and remand the case to the lower court. This makes the decision on the matter one reflecting the consideration of a trial court and the counsel in the case.[8]

In our opinion justice requires that such a course be followed in this case. The cause is remanded with directions to afford the parties an opportunity to reframe their pleadings in such manner as to present any or all of the additional theories referred to above and all appropriate defenses thereto. If the pleadings are so reframed a new trial shall be had thereon supplemental to the trial already had, the resulting judgment to be based upon the entire record of both trials. Questions disposed of on the merits in this opinion shall be deemed adjudicated and will not be subject to re-examination at such new trial except to the extent the district court deems necessary in dealing with new issues presented. Costs on this appeal will abide the result of the further proceedings.

This opinion is filed in substitution of the opinion herein filed on May 31, 1961, the latter being hereby withdrawn. The petition for rehearing directed to the opinion of May 31, 1961, is denied.

7. See, e. g., Sherman v. United States, 356 U.S. 369, 379 note 2, 78 S.Ct. 819, 2 L. Ed.2d 848 (Frankfurter, J., concurring); Terminello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 1, 93 L.Ed. 1131; Kessler v. Strecker, 307 U.S. 22, 34, 59 S.Ct. 694, 83 L.Ed. 1082; Great Northern Ry. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 538 S.Ct. 145, 77 L.Ed. 360; Duignan v. United States, 274 U.S. 195, 198, 47 S.Ct. 566, 71 L.Ed. 996; Note, Sua Sponte Consideration in Appellate Review, 27 Fordham L.Rev. 477.

8. See, e. g., United States v. Shelby Iron Co., 273 U.S. 571, 47 S.Ct. 515, 71 L.Ed. 781; United States v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 22 S.Ct. 428, 46 L.Ed. 619. This court followed such a course in Fidelity & Guaranty Fire Corporation of Baltimore v. Bilquist, 9 Cir., 99 F.2d 333, 355.