TERRY R. O'BRIEN, Appellant, *v.* STATE OF
NEVADA, Respondent.

No. 6697

August 30, 1972                    500 P.2d 693

*J. Raynor Kjeldsen,* of Reno, for Appellant.

*Robert List,* Attorney General, and *Roland W. Belanger,*
District Attorney, Pershing County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

A jury convicted Terry O'Brien and his codefendant, Rickey Pinney, of grand larceny and burglary. They were charged with the theft of three radiators valued at more than $100 from the Poole Ranch and, by separate count, with having entered the power house on the SRY Ranch with the intent to commit larceny. Only O'Brien has appealed.

The State's case was based solely upon circumstantial evidence and was flatly contradicted by O'Brien and others who testified on his behalf. He contends that the evidence is insufficient to support his conviction of grand larceny, and that his conviction for burglary also must be set aside since the court precluded the reception of evidence favorable to him.

1. Grand Larceny. Three radiators, the two from trucks and the other from a diesel pump engine, disappeared from the Poole Ranch. A few days later, O'Brien sold two small and one larger radiators to Sierra Scrap and Salvage at Sparks, Nevada. The radiators bore no identifying marks or serial numbers. The State was not able positively to identify the radiators sold by O'Brien to be from the Poole Ranch. O'Brien asserts a failure of proof that he stole the radiators.

Identification is generally a jury question. The State offered the following circumstances relevant to the issue of identity. O'Brien and Pinney were friends. O'Brien brought the radiators to the scrap dealer in Pinney's car. Tire tracks from Pinney's car were found at the theft scene. The receipt for the radiators given by the scrap dealer to O'Brien was in the possession of Pinney when Pinney was arrested. The radiators stolen were similar in size, appearance and number to those sold. This was the best proof available to the State and contained sufficient substance to present a jury question as to

whether the property was identified beyond a reasonable doubt. State v. Handler, 50 P.2d 977 (Kan. 1935); Tatum v. United States, 88 A.2d 495 (D.C.Mun.App. 1952).

Although the appellant asserts that the evidence fails to show that the radiators had a value of $100 or more [NRS 205.220], we cannot agree. There was evidence received from which the jury could find that the market value of the radiators or their reasonable selling price at the time and place of the theft exceeded the statutory standard of $100. Cf. State v. Romero, 231 A.2d 830 (Sup.Ct.N.J. 1967). The radiators were in usable condition when removed from the trucks and diesel pump and, according to the scrap dealer who purchased them, possessed a value of $140 in usable condition.

2. Burglary. As noted, O'Brien also was charged with burglary at the SRY Ranch. His fingerprint was lifted from a cellophane wrapper found at the power plant shed on the ranch where the unlawful entry was supposed to have occurred. This established that he may have been there at some prior time. He admitted that he had been hunting at the ranch prior to the alleged burglary.

It was the State's belief that O'Brien had unlawfully entered the power plant shed with the intent to commit larceny. Copper wire had been taken from various pieces of equipment therein located. And, when O'Brien, using Pinney's car, transported the radiators to the scrap yard, he also brought some copper wire and sold it to the scrap dealer as well. That wire, however, was mixed with other copper wire in the scrap yard and could not be identified by the dealer for the law enforcement officers who were investigating the case.

During the course of the trial, defense counsel learned that the investigating officers had taken pieces of copper wire remaining in the trunk of Pinney's car following his arrest, and had sent them to the FBI laboratory for comparison with pieces of wire left at the scene of the crime. Counsel asked the prosecutor to make that report available, and when the prosecutor objected, the court ordered its production.[1]

---

[1]Since the report was finally, by court direction, made available to defense counsel in time for use at the trial, we are not directly concerned with the doctrine of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, relating to the suppression, by the prosecution, of evidence favorable to an accused, and declaring such suppression to be a denial of due process requiring a new trial.

The report contained the conclusion that the wire specimens from the scene and the wire specimens from Pinney's car were not of common origin. The relevance of that conclusion is apparent. It constituted opinion evidence favorable to the defense and adverse to the State's theory of the case. It was a formidable opinion from the laboratory of the esteemed Federal Bureau of Investigation. Defense counsel immediately requested a continuance of the trial in order to secure the proper person from the FBI to testify about the testing of the wire specimens and his conclusion or, in lieu thereof, that the report be received in evidence. Each request was denied. This, we think, was prejudicial error.

Counsel did not have time to prepare the affidavit for a continuance contemplated by D.C.R. 21, which is applicable to criminal trials in the district court. Rainsberger v. State, 76 Nev. 158, 350 P.2d 995 (1960). He learned of that report in the middle of the trial and promptly, by oral motion for a continuance, sought to secure the attendance of the appropriate witness. All necessary information for a ruling upon that motion was before the court, and there is no question but that the application was in good faith and not for delay. The purpose of D.C.R. 21 was substantially met. Cf. Rainsberger v. State, supra (where the State's affidavit for a continuance was not in strict compliance with the rule, but a continuance was granted nonetheless).

The conclusion of the expert would tend to exculpate the defendant since it had a direct bearing upon the issue of criminal intent. Without doubt, the prosecutor would have offered that opinion evidence had the result of the testing been to the State's advantage. The accused should have the same right to offer evidence in his favor which the prosecutor has gathered but has failed to disclose in time for defense counsel to take all appropriate steps for its production. Our duty is to avoid an unfair trial to the accused. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." Brady v. Maryland, 373 U.S. 83, 87 (1963). The defense motion for a continuance should have been granted.

3. After trial commenced, defense counsel moved to sever

the offenses so that each would be separately tried. He contended that they were not subject to joinder since they were not "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." NRS 173.115(2). It is obvious that the motion to sever could have been made more than 10 days before the trial date. NRS 174.125. No reason is offered for counsel's failure to do so. It was permissible for the district court to deny the motion upon the ground that it was not timely presented.

4. Other claims of error have been considered and found to be without merit.

Grand larceny conviction affirmed. Burglary conviction reversed, and remanded for a new trial.

ZENOFF, C. J., and BATJER, MOWBRAY, and GUNDERSON, JJ., concur.