ROBERT LOUIS RHODES, Appellant, *v.* STATE OF NEVADA, Respondent.

No. 7826

November 12, 1975                    542 P.2d 196

*Horace Rodlin Goff,* State Public Defender, and *Michael R. Griffin,* Deputy Public Defender, Carson City, for Appellant.

*Robert List,* Attorney General, and *Patrick B. Walsh,* Deputy Attorney General, Carson City; *Michael Fondi,* District Attorney, Carson City, for Respondent.

## OPINION

*Per Curiam:*

A jury found Robert Louis Rhodes guilty of attempted murder. He has appealed from his judgment of conviction, asserting several assignments of error that we reject as meritless. We therefore affirm the judgment of the lower court.

Rhodes, who was confined to the Nevada State Prison, attempted to escape by hiding in a laundry cart that was loaded into a truck and driven out of the prison yard. After exiting the

prison, Rhodes emerged from the laundry cart and threatened the driver of the truck with a knife, ordering him to drive to Reno. The driver, who was a guard at the prison, agreed to do so, but he suggested that Rhodes hide in the cart so that his departure would not be observed by the guards in the tower. Rhodes complied, but the guard, instead of driving toward Reno, returned to the prison gate. When Rhodes found that they were back at the gate, he became furious and stabbed the guard. Rhodes was soon subdued by other prison personnel who came immediately to the guard's rescue.

At trial, Rhodes testified and admitted everything that had occurred during the abortive escape attempt, including possession of the knife, except he claimed he could not remember what occurred from the time the laundry truck returned to the prison gate until the prison officers subdued him. As a result, the sole issue at trial focused on Rhodes's intent to commit the crime charged.

1. Rhodes, during his direct testimony, told the jury that he was serving consecutive prison terms on two separate charges, murder and assault with intent to commit rape. He related to the jury his background with the juvenile authorities, including juvenile adjudications to the Clark County Juvenile Home and the Nevada Youth Training Center. He further testified on direct that he had voluntarily turned himself in to the juvenile authorities to avoid choosing sides with his parents, who were obtaining a divorce. On cross-examination, he was asked if he was not returned to the juvenile authorities because he had been molesting his sister. Although the court sustained defense counsel's objection to the question, Rhodes responded in the negative. On rebuttal, the State called Rhodes's parole counselor, Patrick Hertzel, who testified that Rhodes was returned to the juvenile detention center because of his behavior in his father's home.[1] Rhodes, citing NRS 50.095, subsection 4,[2] claims that the State committed error in introducing evidence relating to his juvenile record.

---

[1]By Mr. Ahlswede, Deputy Attorney General:

"Q.  State why he was recommitted.

"A.  [by Patrick Hertzel, former Youth Parole Counselor] Well, he was returned because of a deterioration in his behavior and ability to adjust at home in my estimation. His father informed me that he was becoming fearful of Robert's behavior around the home when he and his wife were gone and because of abusive acts towards his sister."

[2]NRS 50.095  Impeachment by evidence of conviction of crime.

"  . . .

"4.  Evidence of juvenile adjudications is inadmissible under this section.

". . ."

It is true that NRS 50.095, subsection 4, provides that evidence of juvenile adjudications is not admissible for the purpose of attacking the credibility of a witness. However, the statute was never intended to aid and abet perjury and, as with most statutes, is subject to the doctrine of invited error. See People v. Simmons, 172 P.2d 18 (Cal. 1946). When a defendant voluntarily, and in less than a truthful light, opens his juvenile record to the jury, he may not hide behind the protective shield of the statute. See Davis v. Alaska, 415 U.S. 308 (1974); cf. Harris v. New York, 401 U.S. 222 (1971). Under the factual posture of this case, the court did not err in admitting the testimony relating to Rhodes's juvenile record.

2. Dr. Zora Young, a psychiatrist appointed by the court to examine Rhodes, testified regarding his state of mind at the time of the stabbing. His somewhat equivocal conclusions were based in part on what Rhodes himself had told Doctor Young—that he had blacked out during the stabbing and had no intention of committing the act. On cross-examination, the following colloquy occurred:

"Q. [by Mr. Ahlswede] Now you are relying to some degree on what the defendant told you; isn't that true? .

"A. [by Doctor Young] Yes, I am.

"Q. You are relying upon the truthfulness of his representations to you at times; isn't that correct?

"A. Yes.

"Q. And in your report isn't it true that you stated, 'His statements cannot be entirely trusted, however, because he states that the time he shot a 7–11 store clerk in Las Vegas, he denied that he shot the man with any deliberation and said that the gun went off accidentally when he was questioned by the authorities about this incident. At the time of this examination,' meaning your examination in October, 'he confides that he had an angry urge to shoot the clerk and he had angry thoughts of paying people back for what they had done to him and his brother.'?

"A. Yes.

"Q. So the defendant then is not to be trusted in his statements; isn't that true?

"A. That's right.

"Q. And he would have a tendency to say anything that would help him out of some trouble that he would find himself in; isn't that true?

"A. Yes."

No objection was lodged by defense counsel to the above cross-examination.[3] On this appeal, however, Rhodes urges that the trial judge erred in not giving, *sua sponte,* an appropriate cautionary instruction regarding the testimony relating to Rhodes's previous criminal activity, citing Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962). Rhodes's reliance on Garner is misplaced. Garner was tried without benefit of a counsel. From the opening statement to the closing argument, repeated references were made to Garner's police record. This court, in Garner, recognized the general rule that failure to object, assign misconduct, or request an instruction will preclude appellate consideration. However, where errors are patently prejudicial and inevitably inflame or excite the passions of jurors against an accused, the general rule does not apply, for it is the duty of the court to see that an accused receives a fair trial. In the instant case, Rhodes, represented by his counsel, through his own testimony and that of his expert witness, brought his state of mind into issue. His failure to request a special instruction to the jury precludes appellate consideration. State v. Fouquette, 67 Nev. 505, 221 P.2d 404 (1950); Clark v. State, 89 Nev. 392, 513 P.2d 1224 (1973); Cook v. State, 77 Nev. 83, 359 P.2d 483 (1961). The court below did not err in failing, *sua sponte,* to give a cautionary instruction relating to the testimony directed to Rhodes's prior criminal activity.

Other assigned errors have been considered and are meritless.

Affirmed.

---

[3]An adversary may inquire as to the facts upon which the opinion is based. Wallace v. State, 84 Nev. 603, 447 P.2d 30 (1968).