ERIC WILLIAM ZESSMAN AND MARY EVELINA ZESSMAN, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

No. 9067

January 25, 1978                                        573 P.2d 1174

*Morgan D. Harris,* Public Defender, and *Thomas Leen,* Deputy Public Defender, for Eric William Zessman; and *Horace R. Goff,* Nevada State Public Defender, and *Thomas Susich,* Deputy Public Defender, Carson City, for Mary Evelina Zessman.

*Robert List,* Attorney General, Carson City; and *David B. Small,* District Attorney, and *Terry A. Friedman,* Deputy District Attorney, Carson City, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Following a trial by jury, appellants, both approximately twenty years of age at time of sentencing, were found guilty of

first degree murder, (NRS 200.010; NRS 200.030), in the death of their six-month old son Frederick.[1] Thereafter, the court sentenced both appellants to life imprisonment without possibility of parole. Appellants appeal from these judgments.

Appellants assign the following as error: (1) the trial court's refusal to grant Mary Zessman's motion for continuance; (2) insufficiency of the evidence to support the verdicts; and (3) admission into evidence of color photographs of the deceased, over defense counsel's objection. We are constrained to agree with appellants' first contention.

On January 12, 1976, appellants, represented by counsel, were arraigned in district court. The indictment recited:

> That the above-named Defendants did, willfully and unlawfully with malice aforethought, expressed or implied, murder, FREDERICK SAMUEL ZESS-MAN, an infant human being, by failing to provide said infant with food sufficient to sustain his life, thereby causing his death by starvation and dehydration, on or about November 9, 1975, all of which occurred in the west parking lot of the Carson City Nugget near Curry Street between Robinson Street and Spear Street, Carson City, Nevada.

Preceding the entry of pleas, the following colloquy occurred between the trial judge and the deputy district attorney.[2] Following the referenced discussion, the court proceeded to inform the appellants that the maximum penalty to which they would be subject would be a term of not less than five years nor more than life, consistent with a second degree murder charge. Appellants both entered not guilty pleas to the indictment. The court then set the case for trial by jury to commence May 11, 1976.

During the morning of May 11, 1976, just prior to the commencement of the trial, the trial judge again arraigned appellants, stating,

---

[1]NRS 200.010, in relevant part, defines murder as the "unlawful killing of a human being with malice aforethought."

NRS 200.030(2) provides that: "2. Murder of the first degree is murder which is: (a) Perpetrated by means of poison, or lying in wait, torture, or by any other kind of *willful, deliberate, and premeditated killing. . . .*" (Emphasis added.)

[2]"THE COURT: I am trying to determine from this indictment whether it was sought to charge murder in the first degree or not. I don't think it does.

MR. FRIEDMAN: No, Your Honor, merely an open murder charge.

THE COURT: Which at the most would constitute second degree murder. All right."

At that time (January 12, 1976), I advised you that in my opinion this indictment carried only a maximum charge of second degree murder, but further research has shown me it does also include the charge of first degree murder.[3]

Counsel for appellants then made a motion for continuance claiming additional time was necessary to prepare for trial on the new element of premeditation included in first degree murder. The record is silent as to whether appellants were informed of the element of premeditation prior to the motion for continuance. The court, determining that the defense would not be prejudiced, denied the motion. It is now claimed that because of the surprise attendant to the second arraignment and the denial of the request for continuance, they have been denied their constitutional rights to effective representation and due process.[4]

The matter of continuance is traditionally within the discretion of the trial judge and not every denial of a request for additional time violates due process. Ungar v. Sarafite, 376 U.S. 575 (1964); Polito v. State, 71 Nev. 135, 282 P.2d 801 (1955). Each case must turn on its own circumstances, with emphasis upon the reasons presented to the trial judge at the time the request is made. See, Nilva v. United States, 352 U.S. 385 (1957). A myopic insistance upon expediency in the face of a justifiable request for delay can make the right to defend with counsel of little value. Chandler v. Fretag, 348 U.S. 3 (1954). Accuseds have the right to be informed of the nature and cause of the accusation against them and must be afforded a reasonable opportunity to obtain witnesses in their favor. Cole v. Arkansas, 333 U.S. 196 (1948).

The trial judge's misinformation and belated correction effectively deprived appellants of any notice of first degree murder charges prior to trial, thus denial of the motion for a continuance cannot be said to be error which is "harmless beyond a reasonable doubt," Chapman v. California, 386 U.S. 18, 24 (1967), since appellants were brought to trial without

---

[3]NRS 200.030(3) defines murder of the second degree as comprehending "all other kinds of murder."

[4]The issue was initially expressly raised by appellant Eric Zessman in the trial court and in view of the constitutional magnitude of it, we naturally recognize it in regard to both appellants. Cf. Rhodes v. State, 91 Nev. 720, 542 P.2d 196 (1975); Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962); Nuelsen v. Sorensen, 293 F.2d 454 (9th Cir. 1961).

notice that evidence would be considered on the issue of premeditation. Here, there was a constitutionally inadequate time to prepare a defense. *Cf. Ungar, supra;* United States v. Anderson, 509 F.2d 312 (D.C. Cir. 1974), *cert. denied,* 420 U.S. 991.

What transpired here is analogous to an amendment of substance to an information, which has been held to carry with it a corresponding obligation to allow the defense an adequate time in which to prepare. In re Newburn, 350 P.2d 116 (Cal. 1960). *In accord,* Ex Parte Groesbeck, 77 Nev. 412, 365 P.2d 491 (1961). The remedy for prejudicial surprise resulting in a defendant's inability to present his defense adequately is a continuance, and where, as here, a motion for continuance is made in good faith and not for delay, the motion should be granted. O'Brien v. State, 88 Nev. 488, 500 P.2d 693 (1972); Garden v. State, 73 Nev. 312, 318 P.2d 652 (1957); *cf. Polito, supra.*

Although this conclusion ordinarily would require reversal and remand for new trial, here it is unnecessary to do so.[5] Because of our unique facts, we need not decide whether the record would justify a charge of first degree murder. Since the district attorney desires to abandon those charges rather than to again prosecute appellants for open murder, we need consider only whether the evidence supports charges of second degree murder of which appellants were duly informed. We hold that it does.

The record reveals that although the deceased infant Frederick Zessman suffered severe medical problems following his premature birth resulting in hospitalization in Colorado for

---

[5]The following discussion between JUSTICE E. M. GUNDERSON and special Deputy District Attorney, Terry Friedman, demonstrates the State's dispositional preference in the event of a remand.

"THE COURT: So far as the State is concerned, the judge's error can only be corrected by giving a . . . new trial, if there was a mistake that deprived the defendants of procedural due process.

COUNSEL: Are you asking me, Your Honor, whether or not it would have to be remanded for a new trial?

THE COURT: Would you be willing . . . if we . . . felt constrained to find that there was a denial of procedural due process . . . to accept a modification down to second degree murder, rather than a new trial?

COUNSEL: The District Attorney of Carson City instructed me . . . that if that question were to be asked that they would request modification [to a lesser degree of crime], as opposed to a remand [for a new trial]."

*NOTE:* Appellant Mary Zessman in her opening brief, stated: "This Court should reduce the conviction to a lesser offense consistent with the evidence or remand the matter for a new trial." Eric Zessman generally evidences his concurrence with this disposition.

several months, he became strong enough to be released into his parents' care. When the child was released, and during out-patient treatment which followed, the appellants were carefully instructed about the special care he needed. This included feedings on a demand basis (every two to three hours), vitamin supplements, and medication. Appellants expressed some dissatisfaction with the feeding schedule and insisted on feeding the child every five hours. During his out-patient care, Frederick gained weight but at a much slower rate than when in the hospital. His doctor therefore continued to urge appellants to feed him more often.

In October, appellants left Colorado and came to Carson City, Nevada, living on an alternate day basis in their vehicle and rented motel rooms. On November 9, 1975, appellants' son was found dead on the front seat of his parents' automobile, nude and scantily covered, in cold temperatures.

The primary cause of death was listed as inanition and dehydration. Frederick's autopsy revealed he only weighed five pounds and was completely dehydrated. It further revealed that his stomach was empty and that "both the small and large bowels were almost empty, containing much less than the usual amount of fecal material and food stuff." He suffered wasting of muscle, a complete lack of subcutaneous fat, and lacerations were visible about the face. In addition, the child suffered from a severe case of rickets, a condition almost alien in the contemporary United States because of the presence of vitamin D in all milks and baby formulas. Furthermore, x-rays revealed multiple fractures of a substantial number of Frederick's bones, including the left and right femurs and several ribs. Expert medical testimony revealed these fractures were in all probability the result of batterings.

NRS 47.250(1) raises a disputable presumption, "[t]hat an unlawful act was done with an unlawful intent." In the face of the overwhelming evidence against them, appellants make reference to testimony and evidence offered which tended to show that the child had been fed at somewhat regular intervals and that the infant's history of medical problems was a contributing factor to the death. Their version clearly failed to convince the jury. Any suggested mitigation notwithstanding, when we consider the entire record and the continuing course of abuse and neglect of the child by his parents, it was quite permissible for the jury to conclude that appellants formed the requisite intent to kill Frederick.

Accordingly, as a consequence of the due process deprivation, coupled with the express request of the State,[6] appellants' convictions must be modified to second degree murder pursuant to NRS 177.265. *Compare,* People v. Ford, 416 P.2d 132 (Cal. 1966), *cert. denied,* 385 U.S. 1018; People v. Wolff, 394 P.2d 959 (Cal. 1964).

The judgments imposing the penalties of life imprisonment without the possibility of parole are therefore modified by reducing the degree of crime to murder of the second degree and, as so modified, are affirmed.

Concerning appellants' contention that admission of color photographs was error, we find that the probative value of the evidence outweighed any prejudicial effect. Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977); Allen v. State, 91 Nev. 78, 530 P.2d 1195 (1975).

The causes are remanded to the trial court with directions to pronounce judgment and resentence appellants for second degree murder. *Cf.* Holbrook v. State, 90 Nev. 95, 518 P.2d 1242 (1974); Spillers v. State, 84 Nev. 23, 436 P.2d 18 (1968).

BATJER, C. J., and MOWBRAY, GUNDERSON, and THOMPSON, JJ., concur.