# ROSCOE (FAT) FULLER v. STATE.

No. A-9679.   Oct. 23, 1940.
(106 P. 2d 832.)

R. A. Howard, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Roscoe Fuller, was charged in the district court of Carter county with the crime of larceny of livestock, was tried, convicted and sentenced to serve two years in the State Penitentiary, and has appealed.

For a proper discussion of this case, a short review of the testimony should be given.

Less Pogue testified that on October 6, 1937, two white hogs were stolen from his place; that about ten days thereafter, acting upon certain information he had received, he went to the defendant's place, accompanied by his two boys; that the defendant first denied having any hogs, and then admitted having two hogs which he was fattening; that the defendant had Pogue's two hogs in the defendant's pen; that the defendant said he bought them from a fellow across the creek, but refused to give Pogue the name of the fellow across the creek from whom the defendant claims he bought the hogs; that the defendant made the suggestion that if the witness would keep the law off of him until that night, he would go over and see that fellow and see if the hogs were Pogue's; that the defendant came to his home after dark that night and told him that he had found out that the hogs were Pogue's and for him to come up and get them; that the witness accompanied by the deputy sheriff went after the hogs the next day; that the hogs were stolen in Carter county.

Upon cross-examination, he testified that his place is about 12 or 14 miles from the defendant's; that he never had signed a complaint against anybody for stealing his hogs.

J. D. Pogue and Fred Pogue, the two sons of Less Pogue, testified to substantially the same state of facts as was testified to by their father, Less Pogue.

410

Barney Ross testified that he was a deputy sheriff of Carter county; that Less Pogue advised him on October 9, 1937, that two of his hogs had been taken; that on October 16th he was up at the defendant's house with Pogue; that the defendant was not at home; that Pogue took two white hogs which were there at the defendant's place back home with him.

The defendant did not demur to the evidence, but proceeded immediately at the close of the state's case to put on his witnesses.

Liza Pickens testified that she was the mother-in-law of the defendant; that one night early in October her son, Mose Clay, brought some hogs to the defendant's place; that the defendant was not at home, but was down to Simon Clay's; that Mose Clay went after the defendant and returned in a little while with him; that Mose Clay had made a corn crop there with the defendant, but had moved away from the place along in the summer, and had left the corn there for the other boys to gather; that these hogs that Mose Clay brought there were the same white hogs that Mr. Pogue came after; that her son brought the hogs there in his old black car; that the defendant did not have a wagon or automobile or any other kind of vehicle; that the witness was living with Fat Fuller, the defendant, and had lived with him for a number of years.

The defendant testified in his own behalf that he did not own either a wagon or automobile; that he did have a horse; that Mose Clay brought the hogs to his place; that Mose had some corn there at his house which he wanted to use to fatten the hogs which he brought there; that he had no claim on the hogs, but was just fattening them for Mose Clay. He denied making the statements to Less Pogue about which Pogue testified. That Mose Clay brought the hogs there in a Model "A" Ford which be-

longed to Mose; that he told Pogue, when Pogue inquired about the hogs, that they belonged to a fellow across the creek; that after Pogue left, he had Mr. Oakman take him to see Mose, and he found out the hogs belonged to Mr. Pogue, and went on over to Pogue's house and told Pogue they were his hogs, and for him to come and get them.

This was all the proof on behalf of the defendant.

In rebuttal, the state introduced evidence from Barney Ross that he examined the 1929 Model "A" Ford which belonged to Mose Clay on the 19th of October; that two of the tires were flat and the car looked as if it had not been moved in several weeks; that this automobile was just a wreck of a car.

Mose Clay testified that at the time the hogs were stolen, he was at Paul Heartsill's place hauling cotton and cattle for Heartsill in Heartsill's truck. He denied taking the hogs to the defendant's place, or knowing anything at all about the hogs. He testified that he had a 1929 Model "A" Ford, but that it was not in running condition in the month of October and had not been used by him for a long time; that he left Fat's place where he had been making a crop before the corn was even in roasting ears, and had not seen the defendant until after he was arrested on this charge; that the witness was also arrested, but was dismissed after a preliminary hearing.

Paul Heartsill testified that Mose Clay was working for him at the time he was arrested on this charge of stealing hogs; that he had been hauling cotton for him for about three weeks before he was arrested. He testified that on the night he was supposed to have stolen the hogs Mose Clay hauled cotton with him to the gin and stayed until around midnight, and then went back home with the witness' brother, while he stayed all night at the gin; that

Mose Clay's Ford automobile was not in running condition at the time the hogs were stolen and had not been in running condition for some time before that.

This was all the evidence in the case.

The defendant presented no requested instructions, and did not object to any of the instructions given by the court. We have examined the instructions which were given, and they sufficiently state the law applicable to the facts as shown by the evidence herein.

The defendant for reversal of this case contends:

First. That there was no evidence that the hogs were taken without the consent and against the will of Less Pogue, the true owner thereof.

Second. That the defendant was never arraigned on said charge and given an opportunity to plead to the information.

Third. That the court erred in referring to the defendant as Fat Fuller in his instructions to the jury.

In connection with the first assignment, it is true that the want of consent of the owner of the property to the taking must always be proven in a case of larceny. The proof, however, may be made the same as the other elements of the crime. The proof may be by direct or circumstantial evidence. In this case, the owner testified that he missed his hogs on the night of October 6th and commenced to search for them. Later in his testimony, he refers to his hogs as having been stolen in Carter county. These statements are sufficient to show that the hogs were taken without the consent of the owner.

In the case of Devore v. State, 33 Okla. Cr. 403, 243 P. 999, this court stated:

"The want of consent of the owner to the taking of his property, alleged to have been stolen, is an essential

ingredient of the crime of larceny. It is not required, however, that such want of consent be proven by direct and positive evidence. It may be proven by circumstances the same as any other fact."

The case of Coffey v. State, 29 Okla. Cr. 168, 232 P. 968, cited by the defendant in his brief, is sufficient authority for the proposition that the nonconsent of the owner may be proven by circumstantial evidence the same as the other elements of the offense may be proven.

See, also, Coppler v. State, 52 Okla. Cr. 275, 4 P. 2d 700; Jackson v. State, 10 Okla. Cr. 525, 139 P. 324; George v. United States, 1 Okla. Cr. 307, 97 P. 1052, 100 P. 46.

As to the second assignment of the defendant, the record discloses that when this case was called for trial no question as to the failure of the court to arraign the defendant was raised, and no objection to going to trial was made by the defendant. Both parties announced ready and proceeded with their proof.

The accused in a felony case is always entitled to an arraignment and plea before his trial; and if a demand is made, proper time should be granted the defendant to consult with counsel before pleading to the information. However, this is one of the rights of the defendant which may be waived by him. We have held that such right to arraignment is waived by the defendant going to trial without objection. Brown v. State, 33 Okla. Cr. 217, 242 P. 1065; Sherman v. State, 19 Okla. Cr. 269, 200 P. 262; Simpson v. State, 16 Okla. Cr. 533, 185 P. 116.

The court here treated the defendant as if he had entered a plea of not guilty to the information and so instructed the jury.

In Huffman v. State, 46 Okla. Cr. 377, 287 P. 1090, this court held:

"Where a defendant in a criminal case announces ready for trial, he thereby waives arraignment and plea or any irregularity therein."

See, also, Ray v. State, 40 Okla. Cr. 413, 269 P. 509.

The defendant next complains of the action of the court in referring to the defendant as Fat Fuller in his instructions. As we have heretofore pointed out, no exception was taken by the defendant to any of the instructions that were given. However, we have checked the record in connection with this assignment of error and find that the criminal complaint filed against the defendant charges him under the name of Fat Fuller. The information filed against the defendant refers to him only as Fat Fuller. The defendant was referred to both by the county attorney and the attorney for defendant himself continually in the examination of the witnesses as Fat. The defendant does state at the beginning of the examination that his true name is Roscoe Fuller; but inspite of this statement, his own attorney refers to him by the name of Fat. His mother-in-law referred to him only by the named of Fat. We cannot see how the action of the court in referring to the defendant as Fat has prejudiced him in the least. No doubt, the court in its instructions used the name as shown in the information filed against the defendant. Since the defendant did not object to the instruction with the name of Fat Fuller appearing therein, this contention cannot be insisted upon in this court. But, even though it had been properly raised herein, it still is entirely without merit.

There is some question as to the sufficiency of the evidence to sustain the conviction. However, the evidence, when considered as a whole, was sufficient to be submitted to the jury for their consideration. The defendant was given the minimum sentence provided by law

for such cases. If this minimum punishment had not been imposed, this court is impressed enough with the defendant's explanation of the possession of the hogs that we would feel that justice requires that the punishment be modified. It would have been much better to have charged the defendant with the offense of receiving stolen property; especially in view of the fact that the defendant lived 14 miles from the prosecuting witness and was not possessed of a wagon, automobile or any other kind of vehicle. Under the decisions of this court, the evidence is sufficient to sustain the conviction, but the conclusion is inescapable that the defendant had assistance in the larceny from other parties. The question as to the sufficiency of the evidence is not raised in this appeal, but we have mentioned the same and expressed our view thereon so that the defendant may have this benefit in case of an application for clemency after he has served a proper time in the State Penitentiary.

The judgment of the district court of Carter county is accordingly affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.