The defendant, Marvin Hunsaker, was charged in the district court of Kiowa county with the crime of grand larceny; was tried to a jury, who returned a verdict of guilty but left the punishment to the discretion of the trial court; the court, thereupon, sentenced the defendant to serve a term of three years' imprisonment in the State Penitentiary, from which judgment and sentence this appeal was taken.
The first assignment of error is that the evidence is insufficient to show that defendant was guilty of the commission of the offense charged in the information. This assignment of error is directed to two propositions.
First, it is contended there is not sufficient proof of want of consent of the owner to the taking of the property.
Second, it is contended there is no substantial testimony identifying the property found in possession of defendant as that of the alleged owner, Bill Shwen.
The information alleged that the defendant committed the crime of grand larceny on or about September 15, 1943. The property stolen consisted of various automotive tools, most of which were described in the information, of the approximate value of $200, which tools belonged to one Bill Shwen, but were in the possession and control of his mother, Mrs. Annie Shwen.
At the time of the alleged theft, Bill Shwen was in the military service of the United States. He had left *Page 323 
his tools, which had considerable value, in the dwelling house of his mother.
Mrs. Annie Shwen testified that while she was on a visit to Minco, between the 10th and 18th of September, her house was entered and the tools belonging to her son were taken; that she didn't give anybody permission to take the tools. She described the tools which were stolen. Later, after the sheriff and other officers had testified concerning the finding of certain tools in the possession of the defendant, Mrs. Shwen was recalled and testified that the tools which the sheriff had identified as being the ones found in the possession of the defendant and one Greenwood were the tools which belonged to her son. Some of these tools were marked with the letter "S" and on some of them the letter "S" had been removed by filing.
W. P. Dugan, sheriff of Kiowa county, testified that he was advised of the theft of the tools and chest which belonged to Bill Shwen; that he received information that Bob Greenwood had some tools of that description; that he went to Greenwood's and got the tools and, after talking to Greenwood, he went to the iceplant to talk to the defendant, Marvin Hunsaker. That the defendant told him that he let Mr. Greenwood have the tools and that the defendant claimed in that conversation that the tools were purchased by him. Upon inquiry by the sheriff, the defendant said that he did not know the man from whom he had purchased the tools and that there was nobody present when the purchase was made. That he placed the defendant under arrest and searched a locker at the iceplant which belonged to the defendant and found several other tools which were brought into the courtroom and identified by the witness. *Page 324 
(Most of these tools were the ones which were later identified by Annie Shwen as belonging to her son.)
J. M. White, deputy sheriff, testified that after Marvin Hunsaker was placed in jail that he had occasion to talk to him. In his testimony, the witness stated:
"A. Marvin asked to talk to me, asked me if I would go out in the hall with him. So I did. And he said that I had befriended him in a case before where we questioned him, and on being in the penitentiary before. — Mr. Carder: We move to strike that evidence as being highly prejudicial, pertains to no issue in this case, and generally incompetent, irrelevant, and immaterial. The Court: Strike that about — the last part about him being in the penitentiary. The jury won't consider that. * * * A. And he asked me what he should do, that he thought I had been a friend to him, and told him the truth in the other case. And he asked me what should he do, plead guilty or try to beat it."
Bob Greenwood testified that he is a maintenance man for the Southwest Ice Central Dairy Products Company. That in the latter part of September, 1943, he was living in Oklahoma City, but that a short time after that date he moved to Hobart. That the defendant, at the time of his arrest, was employed by the same company for which the witness is employed. That in the latter part of September, the defendant gave him a toolbox to be used by him in moving feed from Oklahoma City. That the defendant, at that time, told him to take it and have it painted and he could use it. That after he moved to Hobart, the defendant asked him what he had done with the box and the defendant told him that the box might be hot and for him to get rid of it. That after this conversation with the defendant, he became suspicious of the tool-box and went to one of the officers of Kiowa county and told him of the conversation with *Page 325 
the defendant. That the tool box had a value of $40 or $50.
Mitch Hill testified that he was deputy sheriff of Kiowa county. That he accompanied the sheriff to the building where the defendant worked to make his arrest. The witness, then, identified certain tools which were in the courtroom as the tools which were in the defendant's possession at the time of his arrest.
Julius Jones testified that he worked at the ice plant with the defendant. That he saw the defendant with certain of the tools which were in the courtroom, in the latter part of September. That the defendant came to him and wanted him to swear that he (the witness) saw defendant buy the tools from one Tuscon. That at the request of the defendant, he went to the office of the defendant's attorney and gave him a written statement that he saw the defendant buy the tools from Tuscon. That the statement was false, as he had never seen defendant buy any tools. However, he further testified that he never at any time told counsel for defendant that the written statement which he gave was false. That he was a friend of the defendant and, at the time of his arrest, thought he was innocent and wanted to do something to help him out.
Alford Shackleford testified that he worked at the ice plant with the defendant. He testified that he had seen certain of the tools, which were in the courtroom, in the possession of the defendant at the ice plant. That, when the officers came to the ice plant to arrest the defendant, the defendant came to him and wanted him to dispose of some tools and dies and thread cutters that he had there at the ice plant, but that he never had a chance to dispose of them. That, later, the defendant *Page 326 
came to him and asked him to go with him to his lawyer's office and give a written statement that he saw the defendant purchase certain tools from one Tuscon. That he went to the office of counsel for defendant and did give him a written statement to that effect, but, however, the statement was false, as he never did see the defendant purchase the tools. The witness further testified that he had spent the night in jail. That when the defendant's case was set for trial, he left the county because he did not want to testify. That he was arrested at Lubbock, Tex., by the officers and placed in jail.
Raymond Burton testified that he worked for the ice company at Hobart. That certain of the tools which were in the courtroom had been taken from him by the officers. That the tools with red paint on them, which were taken from the witness, were tools which he got from the defendant, Marvin Hunsaker. That the defendant came to him after charges had been filed against defendant and wanted the witness to testify that he had seen the defendant buy the tools from another person, but that he refused to be a witness for the defendant. This witness also had given a written statement to counsel for defendant which was not quite so strong as the statement given by the other two witnesses, but in the statement, the witness said that he saw a man bring some tools to the ice plant where Marvin Hunsaker worked, but that he did not see Marvin buy the tools. The witness further testified that the identification marks on the tools had been filed off by the time he saw them and that Marvin told him to mark them with red paint.
The defendant did not testify and offered no evidence in his behalf. *Page 327 
The defendant contends that the state failed to prove want of consent of the owner, Bill Shwen, to the taking of the property.
Want of consent of the owner may be proved by circumstantial evidence. Fuller v. State, 70 Okla. Cr. 408, 106 P.2d 832; Coffey v. State, 29 Okla. Cr. 168, 232 P. 968; Devore v. State,33 Okla. Cr. 403, 243 P. 999.
In Little v. State, 21 Okla. Cr. 1, 204 P. 305, it is stated:
"The actual condition of the legal title of property alleged to have been stolen is immaterial to the thief; so far as he is concerned, one may be taken as the owner who is in personal possession of the property and whose possession was unlawfully disturbed by the taking. The possessor of the goods from whom the thief took them may properly be described as the owner of the property in the indictment or information."
The witness, Mrs. Shwen, testified that the tools belonged to her son, but had been left in her house and in her possession while he was serving with the armed forces. She testified as to the forcible entry into the house while she was gone on a visit and that the chest of tools was taken without her consent. This was a sufficient showing of lack of consent to sustain the conviction for larceny.
As to the second contention that the tools which were found in possession of defendant were not properly identified as being the tools belonging to Bill Shwen, we cannot agree. The prosecutor might have developed this angle of the case more fully, but the testimony of the mother, coupled with the evidence of the sheriff and the statements made by the defendant, were sufficient to make a prima facie showing of guilt. The similarity of the tools found in possession of the defendant to those *Page 328 
taken from the residence of Mrs. Shwen, the letter "S" appearing on some of the tools, identification marks being filed off of others, were all strong circumstances against defendant. In addition, Mrs. Shwen testified on direct examination:
"Q. I would like for you to look at these tools here. Are these the tools that were in your house that were taken? A. They are."
Then, on cross-examination, she stated:
"Q. According to your best judgment, all these tools belonged to your son? A. Yes."
It is next contended that the county attorney committed reversible error by referring to the fact, in his closing argument, that defendant did not take the witness stand, citing 22 O. S. 1941 § 701.
The record does not contain the full argument of the county attorney in connection with this assignment of error. The record shows the following occurrence:
"And thereupon, said cause was argued to the jury by counsel for the State of Oklahoma and the defendant. And thereupon, during the argument for the state by U. V. Jones, county attorney, the following proceedings was had: Mr. Jones: He has made no explanation of this at all. Mr. Carder: Comes now the defendant and shows that the county attorney in his remarks to the jury referred to the fact that Marvin Hunsaker did not take the stand, and that he had made no explanation of it at all, and now moves the court to grant a mistrial for the reason of the comment of the county attorney on the fact that the defendant did not take the witness stand. Mr. Jones: He has shown no evidence at all. The Court: Proceed. It will be overruled. Mr. Carder. Exception. Mr. Jones: He has made no explanation of this at all to the sheriff's force of this county, as shown by their evidence on the stand here today. Mr. Carder: Your *Page 329 
Honor, we again renew our motion. The Court: It will be overruled. Mr. Carder: Exception."
At the hearing on the motion for new trial, the court, in overruling this objection, concurred in the contention of the county attorney that the statement complained of was made by the county attorney in his argument to show why the defendant was charged when Raymond Burton was not charged, as they each had been found in possession of part of the stolen goods. The county attorney's position was stated as follows:
"Burton explained to the sheriff's force, as shown by the evidence in this case, that he had purchased these tools that were in his possession from Hunsaker, and the sheriff testified that Hunsaker had told the sheriff that he had sold these tools to Burton. And the statement made was to show that Hunsaker had made no explanation of his possession to the sheriff's force, and, consequently, charges were filed against Hunsaker."
As has been many times said by this court, ordinarily, error cannot be predicated upon mere unexplained excerpts of remarks of counsel to the jury. Enough must appear of record to advise this court of what preceded the alleged objectionable remark, and the meaning to be deduced from the context, and whether or not they were invited or provoked by the remarks made by the opposing counsel. Wilson v. State, 24 Okla. Cr. 332,217 P. 885; McDonald v. State, 59 Okla. Cr. 318, 58 P.2d 345.
Standing alone, the quotation in dispute might appear objectionable as a comment on the failure of the defendant to testify. However, the county attorney contended and the court agreed that the statement at which the objection was directed was only a part of a statement of the county attorney in which he was referring to the fact that the defendant, at the time of his arrest *Page 330 
by the sheriff, did not explain to the sheriff where he got the tools, but that Raymond Burton, who likewise was found in possession of certain of the tools, did make an explanation of his possession, and no charges were filed against Burton, while charges were filed against the defendant.
In Payne et al. v. State, 21 Okla. Cr. 416, 209 P. 334, it is held:
"Where the record is incomplete touching upon alleged disparaging remarks made in the closing argument, this court will presume that the trial court ruled correctly."
In McDonald v. State, supra, the county attorney used the following language:
"What does the defense say about this? They don't say anything, it is undisputed."
The record, in that case, did not contain any of the argument of counsel, except the above excerpt, to which objection was made by counsel for defendant. In disposing of the contention therein raised, this court stated:
"The statute, section 3068, supra, is comprehensive in the extreme and this court will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witnesses in his behalf. This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the state's evidence by proof other than that which might be given by the defendant personally. Murrell v. State, 34 Okla. Cr. 413, 246 P. 644; McDaniel v. State, 35 Okla. Cr. 425, 250 P. 804; Soper v. State, 22 Okla. Cr. 27, 208 P. 1044.
"Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the *Page 331 
jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by the opposing counsel."
In Chesser v. State, 63 Okla. Cr. 84, 73 P.2d 191, 192, this court held that the statement of the county attorney in his argument to the jury, "Why couldn't they contradict the state's testimony, but not one place do they do that," and "I say again there is no evidence offered to contradict the state's evidence in this case," was not a comment on the failure of the defendant to testify.
There is nothing in the record here to show whether the alleged objectionable remark was made in the opening or closing argument of the county attorney, or whether it was in response to some criticism made of the county attorney's action in not prosecuting the witness Burton. With the record in such an incomplete condition, this court feels bound by the finding of the trial court that the alleged remark was not a comment on the failure of the defendant to testify.
In this case, the evidence of guilt is chiefly that defendant was found in possession of property which had been recently stolen. He made incriminating remarks.
In Chesser v. State, supra, in discussing the weight to be given to evidence of possession of recently stolen property, this court stated:
"Originally from the very nature of the case the fact of possession of property recently stolen is generally accompanied by other corroborative or explanatory circumstances of presumption. If the defendant secreted the property, if he cannot show how he became possessed of it, if he gave false, incredible or inconsistent accounts of the manner in which he acquired it, or that it had *Page 332 
been sold to him by a stranger, if he has attempted to obliterate from the stolen property marks of identity, or ownership, these and all like circumstances are properly considered as throwing light upon and explaining the fact of possession, and render it morally certain that such possession can be referable only to a criminal origin, and cannot otherwise be rationally accounted for."
Upon a consideration of the entire record, we have found no error of sufficient importance that would warrant us in disturbing the verdict. The judgment of the district court of Kiowa county is accordingly affirmed.
BAREFOOT, P. J., concurs. DOYLE, J., not participating.