**STATE of Utah, Plaintiff and Respondent,**

v.

**Byron Dale PETERSON, Defendant and Appellant.**

No. 18298.

Supreme Court of Utah.

April 13, 1984.

Bryce K. Bryner, Price, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert A. Parrish, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice.

Defendant appeals convictions of aggravated burglary,[1] aggravated assault[2] and assault.[3]

In the early morning of September 1, 1981, Sandra Dotson, a resident of Price, Utah, was awakened by noises in her kitchen. She had been sleeping on a couch in the living room, which was adjacent to the kitchen, because she had recently broken both legs in an automobile accident and was unable to negotiate the stairs leading to her bedroom. As she awoke, although the room was still somewhat darkened, she could see a person, whom she described as balding, approximately 6 feet tall and of heavy build, lean out from the kitchen doorway. She thought it might be her boyfriend, Joe Gross, or perhaps her ex-husband, Walter Dotson. However, when she asked who was there, the person did not respond; instead, he approached her and placed both hands around her neck. She struggled and screamed, but the assailant beat her about the head and face, sat on her body and then strangled her. As a consequence, she drifted in and out of consciousness several times.

One of Mrs. Dotson's two children, Tammy, age 14, had been sleeping in the basement and was awakened by the simultaneous sounds of her mother's screams and her alarm clock, which had been set for 6:30 a.m. Tammy immediately went upstairs and looked into the living room, where she observed someone on top of her mother, and assumed it was her mother's boyfriend. She then turned on the kitchen light and asked her mother if she was all right. Her mother did not answer, but the assailant turned and looked at her. At that point, she recognized him, not as her mother's boyfriend or ex-husband, but rather as one "Pete" Peterson, the defendant herein.

Tammy ran for the back door, but the assailant caught her by the wrist and began choking her. She too lost consciousness momentarily. When she regained consciousness, she again observed defendant beating and choking her mother, whereupon she ran out the back door to the house of a next-door neighbor, Edward McKinney.

Edward McKinney testified that at approximately 6:20 a.m. on September 1, 1981, he was awakened by Tammy Dotson, who had come running and screaming to his front door. She quickly apprised him of what was happening and he immediately ran to her house, entered by the back door and observed the assailant lying over Sandra Dotson. McKinney asked what was going on, to which the assailant replied, "Nothing." The assailant then got up, walked past Mr. McKinney and left through the back door. A kitchen light clearly illuminated his face as he left the Dotsons' house.

In the meantime, Tammy Dotson, having remained at the McKinney's house with Mrs. Marilyn McKinney, saw the assailant leave in an orange van. Mrs. McKinney also testified that she saw the orange van, and further, that a portion of the van's front fender was yellow.

Another neighbor, Richard Rathers, testified that he had heard the screams and had seen the assailant drive off in what he

---

1. A first degree felony, in violation of U.C.A., 1953, § 76–6–203.

2. A third degree felony, in violation of U.C.A., 1953, § 76–5–103.

3. A class B misdemeanor, in violation of U.C.A., 1953, § 76–5–102.

described as an orange "Dodge" van with license plate number NV 5500.

Price City Police apprehended the defendant at his house in Price at approximately 7:00 a.m. on the morning of the incident. He was in bed when they arrived.

The police also found that defendant was in possession of an orange Dodge van, although the license plate number was NV 5301, which slightly varied from the number reported by Mr. Rathers (NV 5500), and the front fender did not have any yellow on it as indicated by Mrs. McKinney.

Sandra and Tammy Dotson and Edward McKinney all described the assailant as balding on the top and bearded. They also testified that they recognized him as "Pete" Peterson. Peterson had come to the Dotsons' house with Joe Gross just a few days prior to the incident, at which time Sandra and Tammy met him for the first time. Also on that occasion, Mr. McKinney, while using the Dotsons' telephone, had seen and recognized Peterson. He had known who Peterson was for several years.

At the time defendant Peterson was apprehended, although he fit the general description given by the witnesses, he did not have a beard.

Robert Gilson and Eve Martines testified that they were with defendant from 1:00 p.m. on August 31 to approximately 4:30 a.m. on September 1, 1981, that they had all been drinking, that defendant had consumed 1½ fifths of whiskey during that time and had driven them back and forth between Price and Helper several times. Sandra Dotson testified that she did not smell alcohol on her assailant.

Charles Peterson, defendant's father, testified that he heard, but did not see, his son come in at 5:30 a.m. on the morning of September 1, 1981, and that he made a note of the time in his diary. He also testified that in addition to himself, his wife and defendant, there were two other persons living in his house on the date in question. Those two persons are his sister-in-law and her husband, LaVar and Lee Seeley.

On September 3, 1981, defendant was charged with one count of aggravated burglary and two counts of aggravated assault. He was arraigned in the circuit court on these charges, and a preliminary hearing was held on November 9, 1981. The court dismissed the aggravated burglary charge, and defendant was bound over to the district court on the two counts of aggravated assault.

On November 16, 1981, defendant was arraigned in the district court on the two counts of aggravated assault, and trial was set for December 21, 1981.

On November 30, 1981, the State refiled the charge of aggravated burglary in the circuit court on a new information. The arraignment and preliminary hearing were held on December 16, 1981, and the defendant was bound over to the district court for trial.

On the next day, December 17, 1981, counsel for defendant received a telephone call from the presiding district judge, who advised defense counsel that the State had just filed a motion to join the new information containing the aggravated burglary charge with the information containing the two counts of aggravated assault. The judge further informed counsel that he felt inclined to grant the motion. The defendant then filed his objection to plaintiff's motion for joinder on December 18, 1981. On the first day of trial, December 21, 1981, the motion was granted over defendant's objection.

Defendant was tried before a jury and convicted of aggravated burglary, aggravated assault and assault. He was sentenced to a 5-year-to-life term of imprisonment in the Utah State Prison, together with a $10,000 fine for the aggravated burglary conviction, 0 to 5 years for aggravated assault and 0 to 6 months in the Carbon County jail for assault, all terms to run concurrently.

I.

Defendant's first contention on appeal is that the trial court erred in granting plaintiff's motion to join the new information

containing the aggravated burglary charge with the information containing the two counts of aggravated assault. He contends that the joinder was improper and prejudicial because it did not afford him adequate time to prepare a defense to the aggravated burglary charge.

As noted above, plaintiff's motion for joinder was filed on December 17, 1981, and granted on the first day of trial, December 21, 1981. Defendant asserts that this four-day period did not afford him adequate time to investigate, subpoena witnesses, or consult with his attorney with respect to the new charge of aggravated burglary. Accordingly, he claims that he was prejudiced by the joinder and should have been granted relief pursuant to U.C.A., 1953, § 77–35–9(d), which provides in pertinent part:

> (d) If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information, or by a joinder for trial together, the court shall order an election of separate trials of separate counts, or grant a severance of defendants, or provide such other relief as justice requires.

Section 77–35–9(d) further provides: "A defendant's rights to severance of offenses or defendants is waived if the motion is not made at least five days before trial." Defendant maintains, in light of this provision, that inasmuch as the State's motion for joinder was both filed and granted later than "five days before trial," defendant was precluded from exercising his right to move the court for a severance of the offenses. He therefore contends that the State should be likewise bound by the five-day requirement of this provision in the exercise of its right to enter a motion for joinder of offenses or defendants.

 The granting of a motion to join offenses or defendants is a matter which rests within the sound discretion of the trial judge, and this Court will not interfere with that discretion unless it is shown to

have been clearly abused.[4] Under the circumstances herein presented, we find no abuse of discretion in the decision to grant the State's motion for joinder.

The record does not support defendant's claim that he was prejudiced by the lack of time to prepare his defense to the aggravated burglary charge. Contrary to the implications of his argument, defendant had much more than just the four-day period between the filing of the motion for joinder (December 17, 1981) and the granting thereof (December 21, 1981) to prepare his defense to this charge.

As noted previously, the original information filed against defendant on September 3, 1981, included the offense of aggravated burglary. Defendant had more than two months, until November 9, 1981, the date of the arraignment and preliminary hearing in the circuit court, to prepare his defense to all charges. Although the aggravated burglary charge was dismissed by the circuit court (on November 9, 1981), shortly thereafter, on November 30, 1981, the charge was again filed against him. Defendant then had until December 16, 1981, the date of the second arraignment and preliminary hearing on this charge (in the circuit court), and thereafter, until trial commenced on December 21, 1981, to further prepare his defenses and strategy. In light of these circumstances, it appears that defendant was on notice of the aggravated burglary charge and that he had adequate time to prepare his defenses thereto.

Defendant's claim of prejudice is further weakened by the fact that his defense of alibi, which had been prepared relative to the assault charges, was equally applicable to the aggravated burglary charge.

 Furthermore, we find no merit to defendant's contention that the prosecution should be subject to the waiver provision of § 77–35–9(d). This provision speaks only to defendant's right to severance of of-

---

**4.** *See State v. Collins,* Utah, 612 P.2d 775 (1980); *State v. Burke,* 102 Utah 249, 129 P.2d 560 (1942).

fenses; it does not, either expressly or impliedly, impose similar restrictions upon the prosecution's right to joinder of offenses. In the situation posed by this case, *i.e.*, where the motion for joinder is made and is granted after defendant's right to a motion for severance of offenses has expired, defendant's right to oppose the joinder is expressed through an *objection* to the motion for joinder. It would be but an exercise in futility for the court in the present case to entertain a motion for severance immediately after ruling upon the objection to the joinder of offenses, because the grounds of both motions would or should be the same. We therefore hold that defendant's rights were adequately expressed and protected through his objection to the motion for joinder.

In accordance with our resolution of the various issues presented under this point of the appeal, we hold that the trial court properly exercised its discretion in granting the motion for joinder of offenses.

## II.

█ Defendant next contends that the trial court erred in failing to formally arraign him after the joinder of offenses on the information charging him with aggravated burglary. He submits that arraignment is a critical stage in criminal proceedings and should therefore not be subject to waiver and, further, that the burden is on the court, rather than the defendant, to see that the formal arraignment procedure required by U.C.A., 1953, § 77–35–10(a)[5] is administered. Alternatively, he argues that if the arraignment proceeding is subject to waiver, it is incumbent upon the

court to advise the defendant of the attendant rights he would be waiving.

The prevailing view, with respect to the right to an arraignment and plea before trial, has been stated thus:

[T]he Fourteenth Amendment of the Constitution of the United States guarantee[s] to every defendant due process of the law.[6] The right to counsel and the right to enter a plea in open court are essential aspects of due process. [Citations omitted.] *It is clear that these aspects of due process may be waived under the proper circumstances.* [Emphasis added.][7]

And further:

The accused in a felony case is always entitled to an arraignment and plea before his trial; however, this is one of the rights of the defendant which may be waived by him.[8]

The question, then, is not whether arraignment is subject to waiver—clearly it is—but rather, whether the "proper circumstances" exist in this case to justify the waiver of defendant's right to an arraignment and plea.

It is generally recognized that where a defendant announces readiness for trial and then proceeds to trial without having been formally arraigned, he/she effectively waives the right to be arraigned.[9] A representative articulation of this principle, provided by the Supreme Court of the State of Kansas, is as follows:

[W]hen the case was called for trial, the trial court inquired if the parties were ready, and the defendant without objection announced he was ready for trial. *It is settled law that arraignment and*

---

**5.** This section provides as follows:

Upon return of an indictment or upon receipt of the records from the magistrate following a bind-over, the defendant shall forthwith be arraigned in the district court. Arraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant or stating to him the substance of the charge and calling on him to plead thereto. He shall be given a copy of the indictment or information before he is called upon to plead.

**6.** Section 7, Article I of the Constitution of the State of Utah also guarantees due process of the law.

**7.** *People v. Martinez,* 154 Cal.App.2d 233, 316 P.2d 14, 15 (1957).

**8.** *Hutchinson v. State,* Okl.Cr., 278 P.2d 858, 860 (1955), quoting *Fuller v. State,* 70 Okl.Cr. 408, 106 P.2d 832, 833 (1940). *See also State v. Parker,* 80 N.M. 551, 458 P.2d 803 (1969); 21 Am.Jur.2d Criminal Law § 438 (1981).

**9.** *Id.*

*plea may be waived and it is waived in effect by an announcement that defendant is ready for trial.*[10] [Emphasis added.]

A further articulation of this principle was made by the Court of Appeals of the State of Washington in the case of *State v. Anderson.*[11] The facts of *Anderson* are sufficiently similar to those of the instant case to allow comparison. There, the initial information charged defendant with violating a firearms regulation and taking an automobile without the owner's consent. Eight days later, the defendant was arraigned on the two charges. In the interim, an amended information was filed against him charging two counts of burglary. Defendant, however, was never arraigned on the amended information. Following a trial on the merits, the defendant was found guilty of all charges, whereupon he moved the court for a new trial, alleging as the basis of the motion the failure to arraign him on the burglary charges. The trial court denied the motion and the defendant appealed. Affirming the conviction, the Washington Court of Appeals held:

> The record shows defendant had a full trial on the merits as if a plea of not guilty had been entered on the two counts. He proceeded to trial without objection and without asking for a continuance after announcing he was ready to proceed to trial. By his conduct defendant effectively waived his right to a formal arraignment. [Citations omitted.] We find no violation of due process.

528 P.2d at 1005.

In the instant matter, the record shows that at the beginning of trial, the court clerk read aloud the information which contained both the aggravated assault charges and the aggravated burglary charge. The clerk also stated that the defendant had entered a not guilty plea to each of the charges. The parties thereafter announced their readiness for trial, and the trial proceeded.

In accordance with the foregoing authorities, we hold that by announcing his readiness for trial and proceeding to trial without any form of objection to the charges of the statement made by the clerk to the effect that defendant had entered a not guilty plea, and further by allowing a full trial on the merits as if a plea of not guilty had been entered, defendant effectively waived his right to a formal arraignment.

### III.

 Defendant's third contention is that the trial court erred in permitting the prosecution to rebut defendant's alibi witness.

Prior to trial, defendant notified the court and the prosecution in writing of his intention to claim the defense of alibi and provided a list of the names and addresses of witnesses he intended to call to establish his alibi. The prosecution did not in turn notify the defendant of its intention to call witnesses to rebut defendant's alibi evidence. The procedure for claiming an alibi and the right of the defendant to discover the prosecution's rebuttal is set forth in U.S.C., 1953, § 77–14–2, the full text of which is footnoted below.[12]

In a hearing outside the presence of the jury, the prosecution informed the court

---

**10.** *State v. Trams,* 189 Kan. 393, 369 P.2d 223, 225 (1962).

**11.** 12 Wash.App. 171, 528 P.2d 1003 (1974).

**12.** Section 77–14–2 provides:

(1) A defendant, whether or not written demand has been made, who intends to offer evidence of an alibi shall, not less than ten days before trial or at such other time as the court may allow, file and serve on the prosecuting attorney a notice, in writing, of his intention to claim alibi. The notice shall contain specific information as to the place where the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or his attorney, the names and addresses of the witnesses by whom he proposes to establish his alibi. The prosecuting attorney, not more than five days after receipt of the list provided herein or at such other times as the court may direct, shall file and serve the defendant with the addresses, as particularly as are known to him, or the witnesses the state proposes to offer to contradict or impeach the defendant's alibi evidence.

(2) The defendant and prosecuting attorney shall be under a continuing duty to disclose the names and addresses of additional wit-

that it intended to recall Officer Dean Holdaway to rebut the anticipated alibi testimony of Mrs. LeVan Seeley. Officer Holdaway was to testify about a statement made by Mrs. Seeley at the time of the crime that would be inconsistent with her expected alibi testimony. Defendant objected because Officer Holdaway's name had not been submitted to him as a possible rebuttal witness. The prosecution explained that Officer Holdaway had previously reported that someone had made a statement to him concerning the time of defendant's arrival home on the morning of the incident which would be inconsistent with the defense's alibi testimony, but that he (Officer Holdaway) was unable to identify the source of that statement as Mrs. LeVan Seeley until the day before trial; thus, notice to defendant could not be given prior to that time. Following this exchange, the trial court ruled as follows:

> THE COURT: ... My position is this: This man, this rebuttal witness, is an officer that has testified both at the Preliminary Hearing and has heretofore testified to this Court about this matter. I don't see where that causes any harm under these circumstances. I mean you would both have had an opportunity to cross-examine him before about this whole matter. You could have asked him anything you wanted and I don't see where that falls into this type of category of surprise. Anyway I don't want to argue about it, that's the ruling so I'm going to allow that. So, of course, if she's lying, I don't see how there's a rebuttal situation.

Following this ruling, defendant did not call Mrs. Seeley as a witness. Defendant claims that the ruling was erroneous in light of the requirements of § 77–14–2.

We note that subsection (4) of § 77–14–2 authorizes the court to waive the require-

ments of this section for good cause shown. This right of waiver was addressed in *State v. Case*,[13] a case involving facts and issues similar to those of the instant matter. In *Case*, the defendant was charged with aggravated robbery. Shortly after the robbery had occurred, a friend of the defendant's informed the victimized store clerk that the defendant had committed the robbery. At trial, however, when this friend was examined by the prosecution relative to his statement, he denied having made it to the store clerk. Consequently, the prosecution recalled the store clerk as a rebuttal witness, although no notice had been given the defendant. Following conviction, the defendant appealed to this Court alleging as reversible error the State's failure to give notice of rebuttal witnesses. Affirming the conviction, this Court held:

> While we are of the opinion that the defense and the prosecution should meet the requirements of the statute with meticulous care, nevertheless in this matter defendant knew that Mrs. Barker [store clerk] would become a witness against the defendant and her testimony respecting the conversation with Christensen [defendant's friend] would have been known to the defendant had it been inquired into.... There is no showing that the prosecution intentionally attempted to make any concealment of the facts regarding the alibi or its refutation. We are of the opinion that the trial court was justified in waiving the requirements of the statute.[14]

In the instant matter, the defendant had an even greater opportunity to cross-examine the disputed witness (Officer Holdaway) and inquire into the substance of his rebuttal testimony than the defendant had in *Case*, inasmuch as Officer Holdaway had previously testified at both the preliminary

nesses which come to the attention of either party after filing their alibi witness lists. (3) If a defendant or prosecuting attorney fails to comply with the requirements of this section, the court may exclude evidence offered to establish or rebut alibi. However, the defendant may always testify on his own behalf concerning alibi.

(4) The court may, for good cause shown, waive the requirements of this section.

13. Utah, 547 P.2d 221 (1976).

14. *Id.* at 223. *See also State v. Haddenham,* Utah, 585 P.2d 447 (1978).

hearing and the trial. Furthermore, there was no showing of an intentional attempt by the prosecution to conceal its rebuttal witness. We therefore hold that the trial court was justified in waiving the requirements of the statute.

### IV.

██ Defendant's fourth assignment of error is the trial court's failure to grant his motion for new trial upon the grounds that the prosecution asked a witness an improper question.

During the cross-examination of defense witness Evan Reid, the prosecution twice propounded the question, "Mr. Reid, are you Mr. Peterson's parole officer?" To this question, defendant interposed an objection, which was sustained by the court. Defendant later cited this question as grounds for his motion for new trial.

Defendant maintains that he did not take the witness stand for the reason that he had been previously convicted of a felony and did not want that fact to be made known to the jury. He alleges that the question regarding his parole was an intentional attempt to circumvent his rights in this regard.

We are unable to find any evidence in the record to support defendant's allegation that the prosecution intended to discredit defendant through its question to Mr. Reid. The prosecution claimed, in the hearing on the motion for new trial, that the sole purpose of the question was to obtain the witness's occupation. It is of course permissible to examine a witness concerning his employment,[15] but in this instance, the manner in which it was done was inappropriate. However, notwithstanding the impropriety of the form of the question, it did not rise to the level of reversible error in light of the overwhelming weight of the evidence against defendant.[16] Accordingly, we hold that the trial court properly exercised its discretion in denying defendant's

motion for new trial on the basis of this allegation.

### V.

As his fifth point, defendant contends that the court erred in denying his motion to reduce the charges from aggravated to simple burglary and assault. This point of the appeal speaks only to the conviction of aggravated burglary and one count of aggravated assault committed upon Sandra Dotson, inasmuch as the other count of aggravated assault, allegedly committed upon Tammy Dotson, was reduced by the verdict to a conviction of simple assault.

Defendant points out that U.C.A., 1953, § 76–5–103 defines aggravated assault as follows:

A person commits aggravated assault if he commits assault as defined in Section 76–5–102 and:

(a) He intentionally causes serious bodily injury to another; or

(b) He uses a deadly weapon or such means of force likely to produce death or serious bodily injury[;]

and further, that the phrase "serious bodily injury" is defined in U.C.A., 1953, § 76–1–601 thus:

(9) "Serious bodily injury" means bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ or creates a substantial risk of death.

He maintains that the evidence does not support a conviction based upon these statutory definitions.

██ The evidence upon which defendant premises this contention is as follows: Sandra Dotson did not suffer any serious bodily injury; she did not require any medical attention after the assault; she made no claim that any kind of deadly weapon had been used; she did not suffer any permanent disfigurement or protracted loss or impairment of the functions of any bodily

---

**15.** *See State v. Brewer,* 26 Ariz.App. 408, 549 P.2d 188 (1976).

**16.** *See State v. Kendrick,* 31 Or.App. 1195, 572 P.2d 354 (1977).

member or organ; and her bodily injury did not create a substantial risk of death.

Defendant relies upon *State of Utah in the Interest of William N. Besendorfer*[17] and claims that because the victim there suffered more severe injuries than Sandra Dotson, and since this Court ruled that the injuries to the victim in *Besendorfer* were the result of a mere assault rather than an aggravated assault, the trial court here erred in its denial of defendant's motion.

The fundamental flaw in defendant's position on this issue is his reliance upon U.C.A., 1953, § 76–5–103(1)(a) as the basis for the State's aggravated assault charges. The record shows that on the second day of trial the State moved the court to amend the information so that subsection (1)(*b*) of § 76–5–103 would be the basis for the aggravated assault charges instead of subsection (1)(*a*). This motion was granted.

It is noted that subsection (1)(b) requires a showing that the assailant used "such means of force likely to produce death or serious bodily injury." It is not necessary to prove that death or serious bodily injury occurred, but only that the actor used means or force likely to have that result. The record shows that defendant attacked Sandra Dotson, placed his hands around her neck and applied sufficient pressure to cause her to black out. Such force clearly could have caused the death or serious bodily injury of Mrs. Dotson and was therefore sufficient under the statute.

■ With respect to the aggravated burglary charge, defendant contends that the State's evidence failed to show that the requisite "physical injury," as contemplated by U.C.A., 1953, § 76–6–203(1)(a),[18] had been inflicted upon the victims. He sub-

mits that the small bruises and cuts sustained by Sandra and Tammy Dotson were not sufficient in magnitude to constitute the type of "physical injury" contemplated by the statute.

The term "physical injury" is equivalent to the term "bodily injury," which is defined as "physical pain, illness, or any impairment of physical condition."[19] As a result of defendant's attack, Sandra Dotson suffered physical pain that is precisely the type of "physical injury" contemplated by the statute. Defendant's argument on this point is therefore without merit.

## VI.

For the offense of aggravated burglary, the court imposed a prison term of 5 years to life, together with a $10,000 fine. Defendant contends under this point of the appeal that the amount of the fine, although within the statutory parameters, was excessive under the circumstances and disproportionate to the offense committed. We disagree.

■ The well-settled rule in this jurisdiction with respect to the imposition of sentences is stated thus:

Upon conviction of a crime whether by verdict or by plea, the matter of the sentence imposed *rests entirely within the discretion of the court, within the limits prescribed by law.* [Emphasis added.][20]

U.C.A., 1953, § 76–3–301(1), as amended, prescribes the bounds of the trial court's discretion in the imposition of fines for first degree felony convictions:

A person who has been convicted of an offense may be sentenced to pay a fine

---

**17.** Utah, 568 P.2d 742 (1977).

**18.** Section 76–6–203 defines aggravated burglary as follows:

A person is guilty of aggravated burglary if in attempting, committing, or fleeing from a burglary, the actor or another participant in the crime:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Uses or threatens the immediate use of a dangerous or deadly weapon against any

person who is not a participant in the crime; or

(c) Is armed with a deadly weapon or possesses or attempts to use any explosive or deadly weapon.

**19.** U.C.A., 1953, § 76–1–601(8).

**20.** *State v. Harris,* Utah, 585 P.2d 450, 453 (1978).

not exceeding $10,000 when the conviction is of a felony of the first degree.

 Inasmuch as defendant was convicted of a first degree felony and the fine imposed therefor did not exceed the $10,000 statutory limit, we find no abuse in the trial court's discretionary sentencing powers in this case.

## VII.

 The next issue raised by defendant is that of the sufficiency of the evidence. He claims that the State's evidence failed to identify him as the assailant and that his evidence sufficiently and clearly established his alibi.

When faced with insufficiency of evidence claims, we adhere to the following time-honored rule of appellate review:

> It is the exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses, and it is not within the prerogative of this Court to substitute its judgment for that of the factfinder. This Court should only interfere when the evidence is so lacking and insubstantial that reasonable men could not possibly have reached a verdict beyond a reasonable doubt.[21]

A review of the record reveals that it amply supports the jury verdict in this case. Three witnesses (Sandra and Tammy Dotson and Edward McKinney), all of whom had either met the defendant or knew who he was prior to the alleged crime, testified that they saw and recognized the defendant as the assailant. Defendant's orange-colored Dodge van was sufficiently identified by three witnesses (Tammy Dotson, Marilyn McKinney and Richard Rathers) as the vehicle used by the assailant to leave the scene of the alleged crime. Furthermore, defendant's principal alibi witness, his father, testified that he merely heard, and did not see, defendant come home at 5:30 a.m. on the morning of the incident and that there were other people besides defendant living in the house at that time. Clearly, upon this evidence reasonable men could conclude, as did the jury in this case, that the assailant was, beyond a reasonable doubt, the defendant Pete Peterson.

## VIII.

 Defendant's final contention is that the trial court erred in allowing the State to amend the information so that subsection (b) of § 76–5–103(1) would be the basis of the aggravated assault charges rather than subsection (a). He complains that in reliance upon the original information he came to trial prepared to defend the aggravated assault charges on the basis of subsection (a) ("serious bodily injury"), not subsection (b) ("force likely to produce death"), and that the amendment on the last day of trial did not afford him adequate time to prepare a new defense. He therefore contends that his substantial rights were prejudiced.

Defendant's claim rests upon U.C.A., 1953, § 77–35–4(d), which provides:

> The Court may permit an indictment or information to be amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced.

We find our recent decision in *State v. Ricci*[22] to be dispositive of this issue. In *Ricci*, the defendant had been convicted of burglary. On appeal, he contended it was error to allow a certain amendment to the information after the parties had rested. Affirming the conviction and the amendment, this Court held:

> This contention is without merit since the amendment did not change the basic charge from the burglary alleged to some other charge. The information charged defendant by Title and Section, which apprised him of the statutory of-

---

**21.** *State v. Lamm,* Utah, 606 P.2d 229, 231 (1980). *See also State v. McCardell,* Utah, 652 P.2d 942 (1982); *State v. Kerekes,* Utah, 622 P.2d 1161, 1168 (1980).

**22.** Utah, 655 P.2d 690 (1982).

fense and which included the very phrase about which defendant now takes issue.[23]

Here, as in *Ricci,* the amendment to the information did not change the basic charge. Furthermore, the information in this matter charged defendant with aggravated burglary by Title and Section (Aggravated Burglary, § 76–6–203), which certainly apprised him of the statutory offense. Accordingly, we hold that no substantial rights of defendant were prejudiced by the amendment to the information.

Affirmed.

OAKS and HOWE, JJ., concur.

STEWART, Justice (concurring in the result in part and dissenting in part).

The defendant was convicted of assault, aggravated burglary, and aggravated assault, for which he was sentenced to prison and fined $10,000. I concur in Parts I, II, III and IV of the majority opinion in result and agree that the assault and aggravated burglary convictions should be affirmed. I concur in the portion of Part VII that holds that the evidence was sufficient to convict the defendant of assault and aggravated burglary and in all other parts of the majority opinion.

Aggravated assault was first charged under U.C.A., 1953, § 76–5–103(a), which requires proof that the defendant intentionally caused serious bodily harm. The information was changed by an amendment on the second day of trial, after the prosecution had presented its evidence, to allege a violation of § 76–5–103(b), which requires the use of force likely to cause death or serious bodily injury. The defendant had no opportunity to prepare a defense to the latter charge. Therefore, I dissent from Part VIII of the majority opinion.[1] I would also remand that portion of the defendant's sentence which imposes a $10,000 fine to the trial court to determine if the defend-

ant has a reasonable ability to pay without resorting to other crimes to do so.

### I.

It is axiomatic that a defendant is entitled to sufficient time to prepare adequately for trial. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964); *State v. Soto,* 60 Hawaii 493, 591 P.2d 119 (1979); *Zessman v. State,* 94 Nev. 28, 573 P.2d 1174 (1978); *Renfro v. State,* Okl.Cr.App., 607 P.2d 703 (1980). *See United States v. Olson,* 697 F.2d 273 (8th Cir.1983).

An information against the defendant was first filed September 3, 1981. The information charged the defendant with causing serious bodily injury to the victim under § 76–5–103(a). When it appeared the prosecution could not prove that charge, the information was amended during the trial to charge that the defendant "use[d] a deadly weapon or such means or force likely to produce death or serious bodily injury." U.C.A., 1953, § 76–5–103(b).

The defense attorney's questions of the victim at trial regarding the extent of the victim's injury indicate that the defendant came to trial prepared to defend against the charge under subsection (a) of § 76–5–103 by showing that he did not cause any injury to the victim. The defendant had no opportunity to prepare a defense against a charge under subsection (b). Under the circumstances, the expert testimony of a doctor may have been critical if the defendant had been afforded time to prepare.

I am of the view that the defendant was denied the right "to demand the nature and cause of the accusations against him," which is accorded him by Article 1, § 12 of the Utah Constitution.

The majority relies on *State v. Ricci,* Utah, 655 P.2d 690 (1982), in which the Court affirmed a conviction when the trial

---

**23.** *Id.* at 691.

**1.** Because I would remand the aggravated assault question, I would not reach the issue of the sufficiency of the evidence discussed in Part

V of the majority opinion and in the portion of Part VII that applies to the aggravated assault charge.

court amended an information during trial. However, the minor amendment in *Ricci* did not include an "additional ... offense," § 77–35–4(d); it only added the words "or remained in" to an information charging burglary. Those words were in the statute the information originally cited, and the amendatory language was not added until after the defendant testified that he had remained in the building. The amendment in *Ricci* merely reflected the evidence presented by the defendant on the charge for which he was being tried.

In the instant case, the amendment did not simply reflect testimony that just "happened to come out" at trial. Prior to trial, the prosecutor had prepared evidence to support a conviction under the added subsection by having an expert testify about the possibility of injury. The inference is irresistible that prior to the beginning of trial the prosecutor intended to base the State's case, at least in part, on that section of the statute that was added by amendment.

The possible defenses to the original charge and the charge in the amendment are not so similar that the defenses would necessarily be the same. *State v. Soto*, 60 Hawaii 493, 495, 591 P.2d 119, 121 (1979), observed:

> [N]o court trial is really so simple that the ordinary attorney need not be afforded a reasonable time in which to analyze and evaluate the facts, study the law of the case, plan trial strategy and prepare his witnesses for their testimony.

On the facts of this case, the motion to amend should have been denied or a continuance granted to assure that the "substantial rights of the defendant [were] not prejudiced." § 77–35–4(d); *Mitchell v. State*, Okl.Cr.App., 395 P.2d 814 (1964).

## II.

The trial court imposed a $10,000 fine, in addition to prison terms, without inquiry into the defendant's ability to pay. Since the defendant will be incarcerated for a substantial period, he will not be able to earn enough to pay the fine. Nor is it likely that he could do so after he has served his sentence. In all probability, the fine is likely to be counterproductive to the ends of justice.

Fines are generally disfavored as punishments for defendants who lack the ability to pay. *People v. Morrison*, 111 Ill.App.3d 997, 67 Ill.Dec. 660, 444 N.E.2d 1144 (1983); *People v. Oravis*, 81 Ill.App.3d 717, 37 Ill. Dec. 407, 402 N.E.2d 297 (1980); *Commonwealth v. Mead*, 300 Pa.Super. 510, 446 A.2d 971 (1982). Moreover, the Utah Constitution prohibits the imposition of excessive fines. Art. I, § 9. The result of imposing a fine beyond the defendant's means is to provide a strong impetus to a defendant to return to a life of crime when he is out of prison. Although the $10,000 fine may seem appropriate to repay the public for the cost of the defendant's crime, the sentence may cost the public far more in the long run if the defendant does seek to pay the fine by further criminal acts.

Other jurisdictions have held that the imposition of fines against a defendant who has no ability to pay is inappropriate. In *People v. Oravis, supra,* the defendant was convicted of burglary and sentenced to a prison term and a $2,000 fine. Although the maximum statutory fine was $10,000, the court held that in light of the defendant's financial condition imposition of a fine in conjunction with a prison sentence was error. The court observed that the defendant did not have a high school diploma, had a bad work record, had worked only part-time, and that his liabilities were $2,000.

A fine imposed on a defendant convicted of the sale of narcotics in Oklahoma was vacated by an appellate court because it was unlikely that he would be able to pay his fine. *Loane v. State*, Okl.Cr.App., 490 P.2d 759 (1971). Similarly, the Alaska Court of Appeals remanded a case in which the trial court ordered payment of a $500 fine because the trial court made no investigation of the defendant's financial situation to determine if he would be able to pay the fine. *Manderson v. State*, Alaska App., 655 P.2d 1320 (1983). *See also Commonwealth v. Schwartz*, 275 Pa.Super. 112, 418

A.2d 637 (1980) (sentence vacated because trial court did not have information to determine the defendant's ability to pay); *Commonwealth v. Martin,* 233 Pa.Super. 231, 335 A.2d 424 (1975) (fine vacated where trial court did not consider the burden a fine would impose on the defendant).

Even an order of restitution is subject to some limitations. The Maryland court stated that rehabilitation remains the primary objective and, "if the amount fixed exceeds the defendant's resources, the rehabilitative purpose of the sentence is frustrated." *Coles v. State,* 290 Md. 296, 302, 429 A.2d 1029, 1034 (1981). The United States Court of Appeals for the Tenth Circuit, in sustaining a fine when the defendant had the ability to pay, stated, "[A] fine which is beyond the ability of one to pay or which takes a substantial portion of one's assets would be excessive and arbitrary." *Moore v. United States,* 150 F.2d 323, 325, (10th Cir.1945).

I would remand for a determination of whether the defendant has the ability to pay the fine imposed.

### III.

The errors discussed in Parts I, II, III, and IV of the majority opinion include: (1) the trial court's failure to arraign the defendant on the aggravated burglary charge; (2) the joinder of the aggravated burglary charge and the aggravated assault charge, thereby depriving the defendant of sufficient time to prepare a defense; (3) the improper admission of the testimony of the prosecution's rebuttal witness; (4) the prosecution's asking improper questions of the defendant's parole officer. Unlike the majority, I think these claims of error are meritorious, even though they are not prejudicial in this case.

The majority states that the defendant had over two months to prepare for trial on the aggravated burglary charge, but in reality he actually had only four days. The original information, which asserted the aggravated burglary charge, was dismissed on November 9, 1981. Any preparation prior to that date was preparation for a preliminary hearing, not for a trial. Once the aggravated burglary charge was dismissed, the defendant had no reason to continue preparing for trial on that charge. The prosecutor filed the new information on November 30, 1981, twenty-one days before trial, but the defendant's attorney did not know of the filing until December 16, 1981. The next day, the trial date was set for only four days later.

The defendant made a timely objection to the joinder motion, but it was overruled. The majority asserts that defense counsel's affirmative response to the judge's formal inquiry about whether he was ready to proceed waived the defendant's right to adequate preparation. Defense counsel had already objected to the joinder and to the time of the trial. When the case was called for trial, he had no choice but to proceed. Clearly, no further objection was necessary in light of the trial court's rulings. To now hold that the absence of still further objections constituted a waiver is hypertechnical and not supported by the facts. Waivers of basic rights should be clear and unequivocal. That test is not met here.

A similar situation occurred in *State v. Cook,* 98 Idaho 686, 571 P.2d 332 (1977), in which the state claimed the defendant waived his right to a continuance because he said he was ready at trial even though he had requested a continuance a few hours earlier. The court held that the statement did not waive the defendant's right to a delay.

Further, I believe that the prosecutor should have been held to comply with the statute requiring notice to defendants of any witness who will impeach or contradict the defendant's alibi witness. U.C.A., 1953, § 77–14–2. The defendant properly provided the prosecutor with the names and addresses of alibi witnesses, but the prosecutor did not provide the defendant with a list of rebuttal witnesses within five days as required by the statute. Not until the second day of trial was the defendant apprised of a rebuttal witness the prosecution intended to call and then did so in the

form of a motion. The judge ruled that the prosecutor could call the rebuttal witness. If the defendant's attorney had been properly notified, he could have discussed the matter with the alibi witness in preparation for trial. But the surprise rebuttal witness caused the defendant's alibi witness to refuse to testify. Even though the rebuttal witness had testified at the preliminary hearing, his testimony did not concern the defendant's alibi. In this matter, the prosecutor had all the advantages of knowing the defendant's witnesses and placed upon the defendant all the disadvantages of surprise. Such conduct does little to insure the defendant's right to a fair trial.

Finally, the prosecutor's reference to the defendant's parolee status was improper. Three times during the trial the prosecutor referred to Mr. Reid's position as the defendant's parole officer—once when questioning the defendant and twice when questioning Mr. Reid. On all three occasions, the defense attorney's objection was sustained, but the jury already had heard the reference that could prejudice them against the defendant. The questions were entirely inappropriate, and the testimony sought was not admissible at trial under Utah Rule of Evidence 21 since the defendant did not take the stand. Although the references were no doubt harmless, the State's conduct was not appropriate under the Code of Professional Responsibility, Canon 7, DR7–106(c)(2) and (7).

DURHAM, J., concurs in the concurring in the result and dissenting opinion of STEWART, J.